### TEXAS NEWS CO. et al. v. LAKE et al.
### No. 9848.

Court of Civil Appeals of Texas. Galveston.
March 28, 1933.

Rehearing Denied April 20, 1933.

John F. Battaile, of Houston, for appellants.

Hart & Stiglich and Geo. P. Prendergast, all of Galveston, for appellees.

LANE, Justice.

This suit was brought by Anna R. Lake, joined by her husband, C. W. Lake, against Texas News Company and Home Indemnity Company of New York, to recover damages suffered by her by reason of alleged negligence of an agent of Texas News Company in the operation of an automobile truck owned by said news company.

Plaintiffs alleged that the Texas News Company's agent and servant in charge of and driving a truck owned by such News Company, in the course of his employment carelessly and negligently drove said truck against an automobile owned by plaintiffs in which Mrs. Lake was sitting, and by reason thereof the plaintiffs' automobile was completely demolished and Mrs. Lake seriously injured, causing her to suffer both mental and physical pain and agony, to her damage in the sum of $20,000; that by reason of the collision resulting in the injuries to Mrs. Lake and to plaintiffs' automobile, plaintiffs "have been compelled to employ extra help, medical service and nurses, and expend a large amount for medicine, bandages, etc., and for these items, together with replacing and repairing damages to her clothing and their automobile," plaintiffs have expended the sum of $400.

The Home Indemnity Company was made a party defendant by reason of the fact that it had issued to the Texas News Company a policy for the benefit of such company and all persons killed or injured by the company's truck.

Texas News Company answered by general demurrer, general denial, and a special plea of contributory negligence.

The indemnity company answered by pleas in abatement and special exceptions, all of which were overruled by the court. It also denied generally the allegations of the plaintiffs' petition.

The cause was tried before a jury, and at the close of the evidence defendants requested the court to instruct a verdict in their favor, which was refused.

The cause was then submitted to the jury upon special issues, in answer to which the jury found: That at the time of the collision in question Earl Belanger, agent of Texas News Company, was in the performance of an errand or duty of his employer; that at such time he was driving defendant's truck at a greater rate of speed than 20 miles per hour; that in driving the truck at such speed he was guilty of negligence; and that such negligence was a proximate cause of the collision and the injuries to the plaintiff.

There were other issues relative to negligence submitted, all of which were answered favorably to the plaintiffs.

The jury found that $1,000, if paid in cash, will reasonably and fairly compensate plaintiffs for the injuries complained of.

Upon the verdict of the jury judgment was rendered for the plaintiffs against the defendants, jointly and severally, for the sum of $1,000, and from such judgment both defendants have appealed.

For reversal of the judgment appellants insist (1) that the court erred in overruling their request for an instructed verdict in their favor, in that the uncontradicted undisputed evidence shows that at the time of the collision in question Earl Belanger, servant of Texas News Company, was using the truck in question on an errand purely his own; that the only evidence adduced shows that the driver of the truck, at the time of the collision, was on an errand purely his

own; (2) that the finding of the jury, that at the time of the collision the truck was being driven by the servant in performance of an errand or duty of his employer, is so against the great weight and preponderance of the evidence as to be wholly wrong.

Upon such contentions appellants pray for a reversal of the judgment and for a rendition of judgment in their favor by this court, but in the event this prayer is not sustained, they pray for a reversal of the judgment and a remand of the cause.

We agree with appellants' contention that the court erred in refusing their request for an instructed verdict in their favor.

■ It has been held that proof of the ownership of a truck or car causing an accident, and additional proof that at the time of the accident such truck or car was being operated by one who was in the employ of the owner, makes out a prima facie case against the owner, such holding being based on a presumption that at the time and place of the accident such truck or car was being operated on behalf and for the master, the owner thereof. Studebaker Bros. Co. v. Kitts (Tex. Civ. App.) 152 S. W. 464, 467. In this case the plaintiffs' right of recovery, if any, must depend alone upon the force of the legal presumption above mentioned, because there is no evidence showing that the mission of the operator of the truck in question at the time of the accident was one for the master, the owner of such truck.

"Such presumption does not rest on an inference of fact. The fact of ownership from which the presumption arises is not regarded as any evidence of the fact presumed, but the presumption is a mere rule of procedure, and is put to flight by an unequivocal showing on the part of the owner that the car was not driven by him, nor by his servant acting within the scope of his employment. Bond v. St. Louis-San Francisco R. Co., 315 Mo. 987, 288 S. W. 777." Murphy v. Tumbrink (Mo. App.) 25 S.W.(2d) 133, 134.

The undisputed testimony of all the witnesses relative to such question negatives such conclusion.

■ The plaintiff called as a witness the defendant's truck driver, Earl Belanger, who testified on plaintiff's examination: That he was in the employ of the defendant company on the day of the accident; that his duties were to deliver magazines and collect bills; that the truck was delivered to him by the news company; that he had control of the truck while on duty; that his hours of work were from 8 in the morning until around 4:30 to 5 p. m.; that at the time of the accident he was operating the truck referred to, and that his wife was with him in the truck; that the car was kept in a garage in Galveston, which was rented for that purpose by his employer.

On cross-examination this witness testified: That the accident occurred on Saturday afternoon, November 1, 1930; that he got off from work on Saturdays at 12 o'clock, and on the day of the accident he had quit work and gone home, where he arrived about 12:30 noon, parking in front of his house; that when the accident occurred he and his wife and a little child five years old were driving around "going nowhere in particular," but that they left home with the intention of going and getting groceries, going from their home on Sixth street to the Beach boulevard, and were traveling west on the boulevard when the accident occurred; that they were just driving out the boulevard before going to the grocery; that after the accident Mrs. Belanger drove the truck on home; that he had no authority to use the truck in his own business or for his own use and purposes; that he had orders not to use it except on company business.

On redirect examination he testified: That the rent on the garage where he kept the car was paid by the news company; that Mr. Rhinelander was the manager of the company at Houston; and that he works under him.

On recross-examination the driver testified: He had driven about 1½ to 2 miles when the accident occurred; that he was not going to deliver any magazines, but was going after their groceries, and nothing else. That at the time of the accident he was not going any place for the news company.

Mrs. Belanger, the wife of the truck driver, called by defendants, testified substantially to the same effect, corroborating the driver in his testimony as to the errand upon which they were at the time of the accident. She testified: That Earl had come home from work for the day and "we were on our way for groceries and we took a ride on the way"; that the accident occurred about 4 o'clock Saturday afternoon; that Earl (the driver) came home about 12 o'clock noon and stayed at home until about 3:30. "We got in the truck and taken our ride and the accident happened at 4 o'clock."

On cross-examination she testified: That Earl did not work on Saturday afternoons, not after 12 o'clock; that the little child was sitting on the right-hand side of the truck and she was in the middle.

Mr. Rhinelander, the manager of the Houston branch of the defendant company, called by defendants, testified as follows: That he was the manager at the time of the accident, his territory including Houston, Galveston, and Beaumont; that Earl Belanger worked for him and his duties were to deliver and pick up magazines and collect bills; that the truck he used was furnished by the Houston News Company; that the truck was to be used solely for the purpose of delivering and picking up magazines; that Belanger

had no authority to use it for personal errands; that Belanger had orders not to use the truck for any other purpose except company business; that Belanger was on duty for the company from 8 a. m. to 5 p. m., with the exception of Saturdays, when his day's work was over at 1 o'clock.

On cross-examination he testified: That the garage in which the truck was kept at Galveston was rented by the news company; that it was Mr. Belanger's duty to put the truck in the garage each day at 5 o'clock and by 1 o'clock on Saturdays.

It is not disputed that the accident occurred on Saturday afternoon, around 4 to 4:30 p. m. It is likewise not disputed that the services of the truck driver to his master terminated at noon on Saturdays, and at 5 o'clock on week days. Nor is it disputed that he had driven about a mile and a half or two miles along the Beach boulevard, the main scenic drive in Galveston, when this accident occurred.

The foregoing testimony is substantially all of the testimony as to what the truck driver's real errand was upon the occasion in question. There is no evidence as to any other purpose for the trip upon which he was engaged. Not only is this the testimony of the truck driver, but it is the testimony of his wife, who was with him at the time. The third party in the truck, on account of her age (five years old), was not called as a witness.

We think, under the undisputed facts shown in this case, the court erred in refusing appellants' request for an instructed verdict in its behalf. Such refusal is contrary to the weight of authority in this state and elsewhere. Van Cleave v. Walker (Tex. Civ. App.) 210 S. W. 767; Hill v. Staats (Tex. Civ. App.) 189 S. W. 85; Christensen v. Christiansen (Tex. Civ. App.) 155 S. W. 995, 997; Dominguez et al. v. Blaugrund (Tex. Civ. App.) 42 S.W.(2d) 489; Langford v. El Paso Baking Co. (Tex. Civ. App.) 1 S.W.(2d) 476.

In Hill v. Staats (Tex. Civ. App.) 187 S. W. 1039, 1042, it is said:

"Without citing further authorities, it is sufficient to say that we find that the trial court did not err in directing a verdict for defendant upon the facts shown. This conclusion is reached with the knowledge that the entire testimony upon the question of the instructions given to the chauffeur came from the lips of defendant and his wife, who both may be said to be interested parties. The testimony of appellee and his wife was positive and unequivocal, nor is there any circumstance disclosed in the record tending to discredit or impeach such testimony."

In Christensen v. Christiansen, supra, it is said: "We think in a case of this kind when the plaintiff, as was done in this case, proves that the defendant is the owner of the automobile, and the driver is employed by the defendant as driver of his automobile, that a prima facie case is made against the defendant. If, however, it appears from the evidence that at the time in question the driver was using the automobile without authority of the owner, and was not in so using it discharging the duties of his employment, the owner is not liable for the negligence of the servant in operating the machine."

Having reached the conclusions above expressed, it becomes our duty to reverse the judgment and to here render judgment for appellant, and it is accordingly so ordered.

Reversed and rendered.