## McNEAL et al. v. HOME INS. CO. et al.
### No. 10543.

Court of Civil Appeals of Texas. Galveston.
Dec. 9, 1937.

Rehearing Denied Jan. 6, 1938.

Cline & Cline, of Wharton, for appellants.

Battaile, Burr & Holliday and Troy Stokes, all of Houston, and R. A. Bassett, of Richmond, for appellees.

GRAVES, Justice.

This suit was one by Mrs. McNeal, acting for herself and other members of her family, for damages for the death of her husband, Clarence Clifford McNeal, from the collision of two automobiles going in opposite directions, alleged to have been caused by the negligence of the insurance company's servant while acting within the course of his employment for it. From an instructed verdict in favor of the insurance company, directed at the close of her testimony, Mrs. McNeal has appealed.

In view of the fact that all the contributing facts and circumstances appear to have been undisputed, it is thought that the single question presented on the appeal may be thus stated:

Did the testimony in the record justify the trial judge in so directing the verdict against the appellants, upon the theory that. the evidence conclusively showed the appellee's servant, Joe Cummings, not to be acting within the scope of his employment for it at the time the appellant's husband, Clarence Clifford McNeal, met his death as a result of the auto collision in question?

Preliminarily to recitation of the testimony, this much of the underlying situation, just referred to as having been undisputed, may be given: (1) Joe Cummings was the agent of the appellee company, and was one among the three people killed in the acci-

dent, including McNeal; (2) that the automobile in which Cummings was riding at the time of the collision was the appellee's property; (3) that when the accident occurred, Rogers Cypert, a 15 year old boy, was operating that car; (4) that he was negligently operating the car at the time and on the occasion of the accident.

What is thought to be a correct and sufficient résumé of the material testimony bearing upon the single question stated, supra, is thus taken from the appellees' brief:

"The plaintiffs introduced as a witness Rogers Cypert, Jr., a boy fifteen years old living in Bay City who had known Joe Cummings about a month and a half before the accident in question, having met him in Wharton at Lewis' Barbecue Stand. Cypert did not see Cummings again until Cummings came out to the Cotton Wood Inn (a night club) about 9:30 p. m. alone. There he contacted the young Cypert boy who introduced him to some of the boys and girls present at the inn. From that time on, Cypert and Cummings were together practically all the time until Cummings was killed in the accident to plaintiff's deceased husband. Cummings had a pint bottle of sloe gin with about a drink and half in it on arriving at the Cotton Wood Inn. After spending about an hour at Cotton Wood Inn, Doris Gordon and a girl whose last name was Rice, Joe Cummings and Roger Cypert went to Bay City in the car driven by Cummings to get some more sloe gin. After which they returned to Cotton Wood Inn. Cummings asked the Cypert boy if he wanted to go some place and he replied that he did not care if he rode around awhile. Cummings then asked the Cypert boy, 'Do you know any girls we can get to go with us?' to which the Cypert boy replied, 'We can ride by and get my sister and go some place and dance.' Cummings and the Rice Girl and Cypert then left the Cotton Wood Inn and went to Boling, which is about 10 miles from the Cotton Wood Inn. The Cypert boy's sister, Laverne, was working at a cafe at Boling right down in the heart of town. They arrived in Boling somewhere in the neighborhood of twelve or one o'clock. 'Cypert's sister was still working when they arrived, because the cafe did not close until 1:30 or 2:00. About 1:30 or 2:00 in the morning they left there, after getting Cypert's sister to join them. As to the activities in Boling the Cypert boy says: 'As to what we did in Boling while we were waiting around for my sister, Mr. Cummings and this Rice girl never got out of the automobile at all. I went in the stand and I then bought some cigarettes and maybe drank a bottle of beer. I really and truly won't say whether we bought some liquor in Boling or not. I don't know.' From Boling the party went to Wharton and drove to an Humble filling station and was informed by a boy working there that there had been a bad wreck on the other side of Hungerford at the Kendleton bridge. They decided to go and see that. As to whether or not the party purchased any liquor at Boling, the Cypert boy says as follows, 'We did not get anything to drink at Boling; I think we had some of the sloe gin. As to whether or not we got another bottle of liquor while at Boling, let me think a minute, and I will tell you in just a minute. I haven't thought anything about it. My best recollection is that we didn't buy any more whiskey after we left Bay City. We bought some sloe gin there; I won't say for sure.' Upon arriving at the Kendleton bridge they saw the place where the wreck had taken place but the wreck had already been taken away. It was about 2:30 a. m. From that point the party went to Rosenberg. Quoting from Cypert's testimony: 'We did not have any liquor in Rosenberg. I believe we still had some of that whiskey; we had some sloe gin that we might have bought in Boling, I don't know.' At the R & L Cafe in Rosenberg the party danced until 3:30 or 4:00 a. m. At the cafe they had a mechanical piano and a victrola. They all danced and had some drinks there. They drank a bottle or two of beer. Joe Cummings didn't drive after the party left the Kendleton bridge. The Cypert boy took charge of the car at the Kendleton bridge and drove it until the party finally reached West Columbia. He was also driving when the accident occurred. When the party left Rosenberg between 3:30 and 4:00 a. m., they went to West Columbia by way of Needville and Damon, some 34 miles on the 'hug-the-coast' highway. The party arrived at West Columbia to the best judgment of the witness, Cypert, about a quarter to five. Upon arriving at West Columbia, Joe Cummings drove Cypert and his sister, Laverne, to the Edward's Cafe and took the Rice girl home. The Cypert boy's sister, Laverne, drove off with Gene Smith at 5:00, Gene Smith having joined

the party at Rosenberg at the R & L Cafe, in his own automobile. However, Laverne did not get out of the car driven by Cummings and join the Smith boy until they reached West Columbia. Joe Cummings showed up, after taking the Rice girl home, at the Edward's Cafe about 4:45 and picked up young Cypert and started out to follow Cypert's sister, Laverne, and Gene ·Smith, who left for Boling. Cummings stopped the car about a mile out of town at the crossroad of Brazoria Highway and the 'hug-the-coast' highway, at which time young Cypert took over the car. Quoting the conversation between Cummings and the young Cypert boy, the Cypert boy says: 'I don't know whether I told him I would drive or not. Anyhow, when we got back in I started to drive.· I don't know whether he asked me to drive, or whether he said he was too sleepy or—I believe it is; I don't remember.' Cummings and the young Cypert boy went along the highway, talking over the events of the night and while doing so the young Cypert boy drove the car off the edge of the highway and bent the right front fender on the wire on a bridge about two miles out of West Columbia. Mr. Cummings then told the Cypert boy to stop and he drove the car himself. Cummings while driving very fast and about half asleep, turned Merritt's corner on two wheels. Merritt's corner is where you turn off to go to Boling when traveling on the West Columbia-Bay City highway. Quoting from the testimony of the Cypert boy, he says: 'When we got to Merritt's corner and made the sharp turn I asked him what he was going to Boling for, and he said he wanted to have the front fender fixed before he went to Bay City.' Upon proceeding on down the highway from Merritt's corner, Mr. Cummings went to sleep and ran off the road again. The Cypert boy shook him and woke him up and said: 'Mr. Cummings, are you sleepy?' and he woke up and asked me to drive. I said: 'Mr. Cummings, hadn't we better sleep for a few minutes until the fog rises? It was so heavy that we couldn't see any further than 50 feet; I don't know whether you could see that far or not; it was a very heavy fog.' The Cypert boy told Cummings that he had better sleep awhile. Cummings said he had to be in Bay City about 7:00 o'clock and that they had better go on and for him to drive. They continued on their way to Boling until they were practically in town. They had already passed the city limits when the accident occurred. The accident happened some time between 6:00 and 6:30 a. m., on October 17, 1935. Cummings told the Cypert boy nothing about going to Wharton on any business. The Cypert boy testified: 'That the Ford V-8 did not have any bags or anything in it; Mr. Cummings left all of his stuff at the hotel in Bay City when he went out on a party. He didn't have any in there when he came to that party.' As to whether or not there was any liquor in the car at the time of the collision, the Cypert boy states: 'I don't believe we drank all that sloe gin and there was also a bottle of beer sitting in the back seat with the cap still on when we left Rosenberg, and I had that bottle of beer. He had a little locker compartment in the front, that is, · in the panel in the Ford V-8 and so as to whether there was any whiskey in there, he had a little sloe gin, about a drink in the corner of the bottle.' "

None of this testimony was either controverted below, or has been challenged here; there was added to it like unquestioned statements from different witnesses to the effect that Joe Cummings had also been the agent for a number of other insurance companies in the territory where he was so acting as the agent for the appellee, at· the same time.

 Under the circumstances, for the' appellee to have been held liable to the appellants in damages for the consequences of the deplorable accident that so happened, under the doctrine of ,respondeat superior, it was necessary for her to show that at that time and place the appellee's Ford V–8 was being operated by its servant, agent, or employee, and in the furtherance of its business; this sine qua non, under the quoted proof, was not made out. On the contrary, the rationale of her evidence as a whole can only be this: That at the time of the accident Cummings, the servant of the appellee, and his young friend, Cypert, who was temporarily driving the car while Cummings slept or lay in a drunken stupor, were on a pleasure trip and frolic purely personal to themselves; wherefore, the appellee was not responsible for such negligent use of its car that resulted in the death of appellant's husband. Barton v. J. M. Radford Grocery Co., Tex.Civ.App., 85 S.W.2d 801, writ of error dismissed; Langford v. El Paso Baking Co., Tex.Civ.App., 1 S.W.2d 476; Dominguéz v. Blaugrund, Tex.Civ.App., 42 S.W.2d 489; Hill v.

Staats, Tex.Civ.App., 189 S.W. 85; Christensen v. Christiansen, Tex.Civ.App., 155 S.W. 995; Worsham-Buick Co. v. Isaacs, 126 Tex. 546, 87 S.W.2d 252; Reynolds v. Texas Iron Works, Tex.Civ.App., 72 S.W.2d 299; Rew v. Stoddard, Tex.Civ.App., 225 S.W. 836; Bresnan v. Republic Supply Co., Tex.Civ.App., 63 S.W.2d 1105; Murphy v. Gulf Production Co., Tex.Civ.App., 299 S.W. 295; Texas News Co. v. Lake, Tex.Civ.App., 58 S.W.2d 1044.

As these cited authorities make manifest, the proof necessary to fix any liability upon the appellee was wanting in a number of particulars; for instance, in addition to the indisputable showing that Cummings, the agent, and Cypert, the substitute driver, were thus engaged in a common enterprise wholly for their own personal pleasure and entirely foreign to the scope of Cummings' employment, as well as the furtherance of his master's business, this record is without any showing of any authority or the want of authority in Cummings as an agent to even use his employer's car in jaunts and frolics of his own, but if it be assumed from the mere fact that he was so using its car at this time, such use of it for his own purely private 'purposes would make his legal status that of only an ordinary bailee anyway, for whose negligence his bailor-employer was not responsible. Hall v. Puente Oil Co., 1920, 47 Cal.App. 611, 191 P. 39; Fisher v. Fletcher, 191 Ind. 529, 133 N.E. 834, 22 A.L.R. 1392.

Neither, it is thought, can liability for this accident be fixed against the appellee, as appellants apparently undertake to do, upon the theory that Cummings, its agent, was going to Boling to have the mashed fender repaired, hence had resumed the scope of his employment, and so was acting in the furtherance of his master's business; aside from the fact that that single act was in nowise shown to have had any such objective, it could not reasonably be given that effect, since to do so would require that it be entirely isolated for that purpose from the series of drinks, drives and dances that punctuate this entire night of revelry, covering the counties of Matagorda, Wharton, Fort Bend, and Brazoria, and necessarily covering many miles of travel; in other words, in the language of the appellee's brief: "To do so, would be to ignore the general purpose and import of the whole transaction, beginning at curfew on October 16, and terminating with the dawn of the new day."

Without further discussion, it is ordered that the judgment be affirmed.

Affirmed.

PLEASANTS, C. J., absent.