## RENFRO v. ELAM.

### No. 1782.

Court of Civil Appeals of Texas. Eastland.

April 22, 1938.

Rehearing Denied May 27, 1938.

A. J. Smith, Sr., of Anson, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

LESLIE, Chief Justice.

C. C. Renfro, Jr., instituted this suit against A. R. Elam to recover damages alleged to have resulted from serious injuries sustained by his wife in a collision or wreck negligently caused by defendant's truck driver, Jack Holsey, when he drove the defendant's truck into the car driven or occupied by plaintiff's wife. The defendant answered by general demurrer, general denial and specially pleaded that Jack Holsey was not at the time of the accident in the course of his employment for defendant, but was on an independent mission for his own pleasure, and was operating the truck at that time without the knowledge and consent of the owner and against his instructions.

The trial was before the court and jury and at the conclusion of the testimony a verdict was instructed in favor of the de-

134

fendant, and plaintiff appeals, challenging the peremptory instruction and judgment entered thereon.

█ In his brief, the appellant states: "The case at bar having fallen in the trial court upon one point, and that was: 'Was Jack Holsey in the line of his employment when the collision happened with the automobile in question?' We have directed this brief to that one point . * * *. We have only assigned one error, that was as to the action of the trial court in peremptorily instructing the jury in favor of the defendant." This proposition limits the inquiry to the controlling question. It becomes necessary to state briefly and in substance the facts reflected by the record. The defendant Elam was the manager of the Acme Lumber Company at Hamlin, and also engaged in "oil field hauling." In carrying on his business he owned and operated three trucks. He engaged Jack Holsey to drive one of them, and that is the one involved in the collision resulting in the injury to plaintiff's wife. As an assistant at the lumber yard, Elam employed one Clifford Stice who also was in the truck at the time of the collision. In the absence of Elam said Stice directed the operation of the trucks in the hauling and lumber business conducted by Elam. Stice was in authority above Holsey.

On the day of the accident, October 3, 1936, Elam had gone on business to Jal, New Mexico. In the forenoon Stice and Holsey unloaded lumber into the Acme Lumber Yard. About 8 o'clock on the Saturday night, of the accident, Holsey, using the truck, took his family down town to the picture show. He himself remained in the truck and thereafter while driving up the street, Clifford Stice hailed him and took a seat in the truck by him. Concerning the accident and Stice's relation thereto Holsey testified in part as follows:

"A. I was driving.

"Q. Was Stice riding on the seat with you? A. Yes sir.

"Q. Where were you and Stice going at the time of the accident? A. We was going into Hamlin.

"Q. Where had you been? A. We had been out north of town to Ted's Place—out to his beer joint.

"Q. That's over in the edge of Stonewall County, isn't it? A. Yes sir.

"Q. What time in the evening did you leave and go out there to this beer joint? A. Well, it was about 8 o'clock. * * *

"Q. At whose suggestion did you all go out to the beer joint that evening? A. Mr. Stice's. * * *

"Q. What was it that he said with reference to going out there? A. He asked me what I was doing. I told him nothing. He said 'Why don't you take me to Stamford?' I told him 'What are you waiting on?'

"Q. You were ready to go? A. Yes sir.

"Q. Did you get started then? A. I told him all right. I drove around the street and started back up the street and was going up to the north end of the street when he said 'Let's go out to Ted's and drink a can of beer.' I said 'All right.' We drove out and drank a can of beer. * * *

"Q. Were you and Clifford arranging to go to Stamford after you got back from out there? A. We were only kidding about that. We didn't intend to go to Stamford at all."

Upon another phase of the case the witness Holsey testified on cross examination as follows:

"Q. Mr. Holsey, I believe you stated a while ago that Mr. Elam instructed you boys—all the truck drivers—not to take the trucks out at any time except on business for him. A. Yes sir.

"Q. That is true, isn't it? A. Yes sir. * * *

"Q. And you had no intention of going to Stamford? A. I didn't.

"Q. Now, when you and Clifford went out to that beer joint you weren't on any business for Mr. Elam? A. No sir.

"Q. How far is it from Hamlin out to the beer joint? A. Something like four miles, I judge."

At another point on direct examination this witness testified:

"Q. Now, did Mr. Elam object to you driving around that way, driving up to town with your family? A. He told me when I first went to work for him that I was only supposed to drive the truck on business."

█ It is unnecessary to further set forth the testimony. Jack Holsey was called as a witness by the plaintiff, and it is apparent that the plaintiff cannot recover in this case without proving that said Holsey, the driver of the truck at the time of the accident, was not only the agent or servant of Elam, but was also engaged at such time in the business of his master. The doctrine of respondeat superior would require as

much. McNeal et al. v. Home Ins. Co. et al., Tex.Civ.App., 112 S.W.2d 339.

■ A careful consideration of the testimony convinces this court that the undisputed evidence shows that said driver of the truck at the time of the accident was not in legal contemplation acting as the agent, servant or employee of his master, and it is equally certain that he was not then engaged in the performance of any duty which he owed the master. He had departed completely from the scope of his employment.

The evidence further shows that at the time of the accident Holsey was using the truck contrary to the instruction of his master and was on a mission purely his own, or for his personal pleasure. The positive evidence so shows. Houston News Co. v. Shavers, Tex.Civ.App., 64 S.W.2d 384, writ refused.

Such was also the nature of the venture or expedition from the standpoint of Clifford Stice. He is in no better position to claim that he at the time of the accident was engaged in the performance of his duty to his master than the witness Holsey. From the standpoint of either Stice or Holsey the purpose of the trip to the beer joint was foreign to appellee's business, as was well known to each of them.

The trial court correctly interpreted the testimony and properly instructed the verdict. His ruling is supported and required by the following authorities: Bresnan v. Republic Supply Co., Tex.Civ.App., 63 S.W. 2d 1105, writ refused; Bishop v. Farm & Home Sav. & Loan Ass'n, Tex.Civ.App., 75 S.W.2d 285; Worsham-Buick Co. v. Isaacs, 126 Tex. 546, 87 S.W.2d 252; G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367; Hill v. Staats, Tex.Civ.App., 187 S.W. 1039, Id., Tex.Civ.App., 189 S.W. 85, writ refused; Gordon v. T. & P. Mercantile & Mfg. Co., Tex.Civ.App., 190 S.W. 748, writ refused; Dominguez v. Blaugrund, Tex.Civ.App., 42 S.W.2d 489; Reynolds v. Texas Iron Works Sales Corp., Tex.Civ.App., 72 S.W.2d 299; Barton v. J. M. Radford Grocery Co., Tex. Civ.App., 85 S.W.2d 801; Van Cleave v. Walker, Tex.Civ.App., 210 S.W. 767; Morgan et ux. v. Luna et al., Tex.Civ.App., 114 S.W.2d 279.

There seems to be no controversy between the attorneys for the respective litigants as to the principles of law applicable in such cases, but their disagreement seems to arise from the interpretation and legal effect to be given to the testimony in the given case. Believing that the instructed verdict is correct under the law and facts, the judgment of the trial court is affirmed,