**CRABB et al. v. ZANES FREIGHT AGENCY.**

No. 12734.

Court of Civil Appeals of Texas. Dallas.
Dec. 3, 1938.

Rehearing Denied Jan. 14, 1939.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellants.

Touchstone, Wight, Gormley & Price, of Dallas, for appellee.

YOUNG, Justice.

Appellant, Ruby D. Crabb, who was plaintiff below, brought this suit individually and as next friend for her minor son, Thomas L. Crabb, Jr., against Zanes Freight Agency, a corporation, for damages on account of alleged fatal injuries to her husband, Thomas L. Crabb; the petition showing deceased to have been the operator of a street car on Commerce Street, November 23, 1936. The injuries to Mr. Crabb resulted from a collision between the street car and one of defendant's trucks, the latter claimed to have been driven at the time and on the occasion by an employe, Jack Calley, in the course of his employment and in the furtherance of the business of defendant. The case went to a jury trial on many grounds of negligence by both parties, defendant specifically alleging that the driver of the truck involved was not in the course of his employment on the particular occasion, but was on a mission of his own; using the truck at said time without its knowledge or consent. Under the provisions of Art. 3769a, R.S., Vernon's Ann. Civ.St. art. 3769a, and as a part of plaintiff's prima facie case, Mr. Downing, defendant's truck foreman, testified in person, and the deposition of Calley was introduced. When plaintiff rested and before the defense offered any testimony, save that elicited by previous cross-examination, a motion for peremptory instruction was presented, urged and sustained; whereupon, the jury was instructed to return a verdict for defendant, which they did. Exception to the court's action was taken by plaintiffs, with the result of this appeal, challenging the correctness of the judgment below relative to such directed verdict.

The facts developed under plaintiff's evidence in chief, are briefly these: defendant's business was the transportation of freight in Dallas and elsewhere, with office, garage and location for its business at 1500 South Preston Street. A mechanical department was maintained for repair of vehicles, with a large shed to the side for trucks and freight against weather conditions. In charge of the garage or repair shop was Mr. Skinner, and Downing, already mentioned, was foreman over the men or truck operators. Light trucks, as well as those necessary for heavy hauling, were used, the heaviest being a 3-1/2 ton Gotfreson, which, with a crane or boom used in connection for lifting heavy material, weighed between nine and ten thousand pounds. This truck was not regularly used for hauling, but more often was in service in loading or unloading heavy material, the crane or boom for lifting purposes being attachable. The employment of Jack Calley by defendant was principally in and about this particular truck, when it was to be used in lifting material or otherwise operated. The accident occurred about one o'clock in the afternoon of November 23rd, the late morning of which was wet and rainy, and Calley had been occupied before the noon hour (from 12 to 1 o'clock) in installing on the truck in question the "A" frame, to which the crane could be attached in the afternoon, preparatory to unloading stone from railroad cars therewith, lifting such material on to other trucks for hauling to the U. S. Postal substation, then under construction. Calley, anticipating the cold rainy conditions to continue, had phoned for his raincoat to be delivered to him at defendant's

plant by taxicab, but it had not arrived when he ceased work at the midday lunch interval. Calley then stated to Mr. Skinner, head mechanic, that he was going to his home (situated further East in the city than defendant's office) for lunch and to obtain his raincoat, not asking for the use of the truck or saying by what means the trip would be made. The truck, already described, was apparently outside the workshop or garage, and under the shed, with other motor vehicles, and after a few minutes, Calley went to the truck, drove it from the place to his home, where he had his lunch, secured his coat and the collision occurred on his return to defendant's plant.

Defendant's rules were that no trucks should be used by employes, except on company business, and Calley testified, in effect, that he had never before taken a truck to go home at the noon hour, usually bringing his lunch with him or eating near his work. He resided within 25 minutes walking distance, ordinarily taking such method of coming to work and returning home in the evening. On this particular day, according to Calley, he was in a hurry to get his raincoat during the noon hour, which explained his use of the truck; testifying definitely that he did not ask Mr. Skinner's permission to drive it out, and could not say that the latter saw him as he drove it away. His testimony as to this is here quoted:

"Q. Well, now, Mr. Skinner I believe you said was your immediate boss there, wasn't he? A. No, sir, he was just head mechanic in the garage.

"Q. Head mechanic; well, he was the one that you told you were going to get your raincoat and get lunch? A. Yes, sir.

"Q. Well, did you go immediately from him and get in the truck? A. I don't remember where I did—I did within five or six minutes after that.

"Q. Now, how far was he from the truck when he told you it was all right for you to go out and get your lunch and raincoat? A. He were in the garage.

"Q. Well, about how many feet was he from the truck? A. Well, it would be thirty-five or forty feet down the line inside the garage.

"Q. Wasn't anything to keep him from seeing the truck moving, was there? A. Yes, sir, the walls of the garage had no opening."

Mr. Downing, defendant's foreman in charge of men and truck operators, testified that he was not in the office when the matters just related by Mr. Calley occurred, but that no employes had permission to drive trucks home for lunch or at night; that Mr. Skinner had charge of the mechanical work in the garage, but with no other powers; and that employes had a definite lunch hour, free to go where they pleased for such purpose. This witness testified further that it was not definite what work Calley was to do about the truck on the particular afternoon; and that defendant owned other small pick-up trucks for light work or hauling.

As already stated, the above facts, in substance, were developed by plaintiff from defendant's employes (together with cross-examination by defense counsel) and as part of plaintiff's prima facie case. In this situation, and under the state of the evidence just presented, appellants contend that a question of fact resulted for the jury's determination of whether Calley, the driver, was in the course of his employment and in furtherance of the business of the Zanes Freight Agency at the time and on the occasion described.

In other words, appellants argue that the facts in evidence make available to them the well settled rule in cases of master and servant, that the scope of the servant's employment, being generally in the exclusive knowledge of the employer, the servant being admittedly in charge of the vehicle involved, a presumption of liability follows; Harper v. Highway Motor Freight Lines, Tex.Civ.App., 89 S.W. 2d 448. In addition, appellants point out that, under the defendant's burden of a full disclosure in such cases, the testimony of Mr. Skinner should have been forthcoming; in absence of which the presumption continued that said Skinner had knowledge of and consented to the particular use of the truck, and with actual or implied authority to permit such use. Appellants further contend that fact questions were presented for the jury as to the scope of Calley's employment, etc.—in that, the true relationship of defendant and its servants was testified to by company employes and interested witnesses (though produced by plaintiff).

It will be noted that plaintiffs did not rely upon the procedural rules stated in Harper v. Highway Motor Freight Lines, supra, in which event their

case of presumptive liability would rest on the defendant's ownership of the truck, operated by one of its employes. Appellants' testimony in chief extended into details of the actual situation as between the corporation and its servant (though from defendant's employes), and we do not think plaintiffs were in position to employ further the rule of presumption in the face of facts so developed by them. As to Skinner, the head mechanic, such positive evidence was that he did not authorize Calley to drive the truck on the noon-hour mission, and had no knowledge thereof, save the possibility of observing its departure. Presumptions disappear when confronted with facts. 17 Tex.Jur. (Evidence) p. 253 sec. 60; American Cent. Ins. Co. v. Heath, 29 Tex.Civ.App. 445, 69 S.W. 235; and only supplies an inference where the fact is not otherwise shown. Geffert v. Yorktown Indep. School Dist., Tex.Com.App., 290 S.W. 1083; Martinez v. Gutierrez, Tex.Com.App., 66 S.W.2d 678, 684; and always gives way to proven facts to the contrary; 17 Tex.Jur. supra, sec. 60 and notes. We think appellants were confined, as to issues, to the facts of their prima facie case, or inferences reasonably deducible therefrom. True, under Art. 3769a, R.S., they were not bound to accept such adverse testimony as correct, and had the right to offer other and further testimony without regard to same; but in lieu of such other testimony, they were restricted, as just stated, to the evidence on which they chose to rest their cause of action. A presumption ceases to be a factor when evidence intended to show the actual facts is introduced, whether offered by the plaintiff or defendant. Normandin v. Parenteau, R.I., 150 A. 460, 461.

The record reveals clearly that Skinner, in charge of defendant's repair shop, had no authority to direct or permit the driving of trucks by other employes; also that no such authority was assumed or exercised by such shop foreman. Appellants seek to raise an issue of knowledge and acquiescence by Mr. Skinner, but the evidence shows merely a possibility on the part of the latter of observing the above described use of the truck by Calley. "No inference is valid unless it be a reasonable one. Nor can an inference be indulged unless it be based upon facts in evidence and not upon other inferences". Garrett v. Hunt, Tex.Com.App., 283 S.W. 489, 491; and mere knowledge and acquies-

cence on the part of Skinner (even if admitted) do not constitute sufficient elements of liability under his proven limited powers as head mechanic.

■ We conclude that the driving of defendant's truck by Calley, during the freedom of his lunch hour, was clearly unauthorized, regrettable as were the results that followed; nor was the conduct of this employe within the scope of his employment, not being in furtherance of defendant's business, or for the accomplishment of the object for which such servant was employed. International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 27 Am.St.Rep. 902; Langford v. El Paso Baking Co., Tex.Civ.App., 1 S.W.2d 476; Texas News Co. v. Lake, Tex.Civ.App., 58 S.W.2d 1044; Houston News Co. v. Shavers, Tex.Civ.App. 64 S. W.2d 384. The difficulty always confronted is in the application of the general rule to particular facts. The present case is greatly simplified when we consider Calley's regular work in connection with the truck. His unauthorized use of it at the noon hour cannot be said to be naturally and ordinarily incident to his regular duties; but a disconnected act and extraordinary. See Acme Laundry v. Weinstein, Tex.Civ.App., 182 S.W. 408, where the following is quoted from Mechem on Agency, Vol. 2 sec. 1879: "* * * Not every act which an agent or servant may do while he is in the place appointed for the service, or during the time in which he is engaged in the performance, can be deemed to be within the course of the employment, or within the scope of the authority. The test lies deeper than that; it inheres in the relation which the act done bears to the employment. The act cannot be deemed to be within the course of the employment, unless, upon looking at it, it can fairly be said to be a natural, not disconnected and not extraordinary, part or incident of the service contemplated. * * *" [page 411.]

So, we do not think the rule of respondeat superior extends to the unauthorized and personal use made by Calley of the defendant's particular vehicle and lifting machine; the object of the mission being alone in the interest of the employe. The cases cited by appellants, holding "scope of employment" to be a jury question, are generally upon facts where the servant's deviation was slight; incidental to his authorized work; and while combining his

own with the business of the master, of which Gulf Refining Co. v. Texarkana, etc. R. Co., Tex.Civ.App., 261 S.W. 169, is typical. The errand on which the servant was engaged in the present case being clearly established, it is concluded, as a matter of law, that same was not incident to, but beyond the scope of his employment with appellee. Even applying to the facts here the rule of reasonableness of the servant's act, as illustrated in 10 Tex. Law Review 69, and cases there discussed, the very unreasonable means by which Calley, the employe, was effectuating his noon-hour mission, alone puts him outside the area of any activity for which his employer could be held liable.

Appellants' assignments and proposition have been carefully studied, but must be overruled, and the judgment of the trial court affirmed.

Affirmed.

### On Motion for Rehearing.

Appellants point out that we mistakenly described the truck as outside the garage at the time the employe, Calley, drove it away. In justice to the record, we withdraw such statement and conclude, from all the testimony, that the truck was inside the garage, but evidently back from the mechanical department. (where Mr. Skinner was), with intervening walls or lack of openings preventing a full view. With this correction, appellants' motion for rehearing is overruled.

Motion overruled.