**PRIDE OF DALLAS TAXICAB CO.**

v.

**PLOUCHE.**

No. 14764.

Court of Civil Appeals of Texas.

Dallas.

March 26, 1954.

Rehearing Denied April 23, 1954.

Chaney, Davenport & Harless, Dallas, for appellant.

White & Yarborough and J. Roll Fair, Dallas, for appellee.

YOUNG, Justice.

This damage suit was filed by appellee as plaintiff against the Taxicab Company and Lee Mitchell, for injuries sustained by his wife, Onie Plouche, on August 7, 1951, while a passenger in a car being driven by Mitchell; the Cab Company denying the existence of any employer-employee relationship on date of injury; affirmatively pleading no authority on part of defendant Mitchell to operate his car on the occasion as a taxicab for such other defendant. Following jury trial and verdict, a joint and several judgment for $2,500 was rendered against defendants from which the corporation, Pride of Dallas Taxicab Company, only, has prosecuted this appeal.

Findings of the jury reflect generally the issues raised by pleadings respectively of the parties; in substance that (1) on the occasion in particular, Lee Mitchell swerved the car he was driving in a violent and unexpected turn at intersection of Reed Street and Second Avenue, Dallas; which was negligence and a proximate cause of plaintiff's injuries; (2) at said time, Lee Mitchell was driving his car at a greater rate of speed than was reasonable and proper under the surrounding circumstances; being also negligence and a proximate cause of injury; (3) that at the time and place, defendant Cab Company failed to have its telephone under proper supervision, but which failure was not a proximate cause of injury to Onie Plouche; (4) that Lee Mitchell was working for defendant Cab Company on August 7, 1951; being also in the course of his employment with said Cab Company on such date. Damages assessed were in sum of $2,500.

Appellant's primary points of appeal are to effect that it was entitled to an instructed verdict at close of the testimony, "(1) since the undisputed evidence showed that

the driver and owner of the car (the co-defendant, Lee Mitchell) was not in the employ of the defendant, Pride of Dallas Taxicab Company, at the time of the accident in question"; and "(2) since the undisputed evidence showed that the driver and owner of the car (the co-defendant, Lee Mitchell) was not within the scope of any employment with the defendant, Pride of Dallas Taxicab Company, on the occasion complained of by the plaintiff." A rather extensive résumé of the testimony is therefore required for a determination of whether the issues resolved against defendant Cab Company have support in the record and inferences properly deductible therefrom. The injured party, Onie Plouche, testified that on the afternoon of said August 7, she called defendant Company as listed in a Dallas telephone book, desiring cab service to the downtown section, Lee Mitchell, defendant, arriving shortly thereafter; that she entered the cab which proceeded to Second Avenue, the cab driver there becoming engaged in a rather serious altercation with another car driver; that a crowd gathered and Lee Mitchell in attempting to leave the scene made an unexpected U-turn in the street; such sudden movement, according to plaintiff, causing the cab door to open, throwing her out, and violently, upon the street pavement, resulting in the injuries complained of.

The controversy centers upon identity of the car in which plaintiff was then riding as a passenger; Onie Plouche describing it as grayish or light colored, painted label "Pride of Dallas" on side, and light on top of car along with the word "Taxi."

Here it may be stated that defendant operates a public service company under contract with City Transportation Company, both concerns subject to terms of a resolution of the Dallas City Council relative to a 4% gross receipts tax, public insurance, and methods of operation; the latter handled through Office of Supervisor of Public Utilities. Defendant operates some fifty cabs, fourteen of which it owns, requiring of these drivers certain hours of service, paying them on a per-

centage basis; the others driving self-owned cars, with Company label and owner's name printed thereon, such owners paying $6. per week stand privilege, vehicles self-maintained; accounting for the 4% gross receipts tax by means of daily report of fares, also bearing expense of required public insurance. The Office of Supervisor of Public Utilities keeps current record of defendant's cars in authorized operation through requirement for permits showing applicant's State License Number and model of car, with issuance of permit to defendant Company upon satisfactory investigation in each instance. When the driver of a self-owned car ceased to use it as a public cab, the Office of Supervisor, upon notification, would take same off the authorized list. The individual driver, Lee Mitchell, was of the latter class; having a Mercury (driven by another party), a Plymouth, then a Kaiser car in such character of service; his cab number at all times being 209.

Mitchell defaulted by way of answer but testified at the trial; in effect that up to August 1, 1951, he had operated under permit a 1946 Plymouth car, blue-gray and dark colored, at which time it was wrecked and traded in at Alexander Motor Company for a 1951 Kaiser; that on the afternoon of plaintiff's call for cab service, he was at the stand and answered it; being engaged at the time in putting cab meter and top light on the Kaiser car; that it carried no sign, nor had a permit been applied for, it having merely a dealer's tag instead of the required license plates; that he advised plaintiff of the situation, she assenting because in a hurry. Mitchell further stated that after the occurrence of August 7, 1951 involving the injuries to plaintiff, he drove the Kaiser to the house of his brother and left town, staying at Fort Worth for some six weeks, then returning to Dallas latter part of September, securing license plates for the Kaiser, applying to the City through defendant for permit, receiving permit in three or four days and employing such car in resumption of cab service. The further testimony of Mitchell was that he had never filed application with defendant to

drive the Kaiser sedan until his return from Fort Worth; prior thereto having no right to drive it as a cab; that he did not own the Plymouth car on August 7, taking it upon himself to answer calls for service from the Atlanta Street cab stand with the Kaiser car; in his own language, "slipping in and using my Kaiser" in hauling of passengers and collecting fares without turn-in of "trip sheets" or payment of tax.

Simon Davis, employed by defendant in some supervisory capacity, and A. H. Thomas, its President, also both testified to knowledge that Mitchell's '46 Plymouth, dark blue in color, was wrecked and withdrawn from authorized cab service between the 4th and 7th of August; that Mitchell was taken off the list of Company drivers on August 6, getting back in September with permit for the Kaiser car; they having no knowledge of this "bootlegging" of calls; Mitchell not being authorized prior thereto to drive the Kaiser as a cab or to take telephone calls as he did; and that Mitchell's last report sheet of passengers transported, was of August 1, 1951. R. L. Irwin, Jr., testifying for defendant, stated that he was employed by the City in Office of Supervisor of Public Utilities; having at hand the records of registration of vehicles operated by defendant Company during August 1951, with list of withdrawal of cabs and substitutions; that prior to August 7, Cab No. 209 (a '46 Plymouth Sedan), was in operation for defendant as approved by the City on August 6; that it was a substitute vehicle for a '47 Mercury approved for operation September 1950, withdrawn from service August 6, 1951; the Plymouth in turn withdrawn on September 4th; the records not showing color of these cars; that on September 28, 1951 the Supervisor's office approved for service as Cab No. 209, a '51 Kaiser, owner Lee Mitchell; the latter shown as owner of each named car; and that as far as the City records disclosed, Mitchell was operating a Plymouth cab on August 7, 1951 for Pride of Dallas Taxicab Company. In this connection, Mitchell, on cross-examination, when asked if the City records were wrong in showing approval of the 1946 Plymouth as of August 6, answered, " * * * Well, I don't know whether they would be wrong or not."

A number of witnesses testified on behalf of plaintiff, describing the car in use on the occasion as grayish in color, light colored, new-looking; all saying that it bore a sign on side, "Pride of Dallas"; R. F. Haney stating that it carried Texas license plates as he remembered.

█ Appellant forcefully argues that plaintiff's testimony in chief gives rise to no more than a presumption that Lee Mitchell was operating one of its authorized cabs on the occasion in question, which presumption was nullified by a full disclosure of facts unequivocally establishing that Mitchell, pursuant to a mission of his own, had involved plaintiff in an accident; the same occurring in a Kaiser sedan while operated by such driver without knowledge or consent of the Cab Company; citing the principle followed in Crabb v. Zanes Freight Agency, Tex.Civ.App., 123 S.W. 2d 752; Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763; Houston News Co. v. Shavers, Tex.Civ.App., 64 S.W.2d 384; and Texas News Co. v. Lake, Tex.Civ.App., 58 S.W.2d 1044. But these authorities agree that the presumptions of fact there discussed are not conclusively overcome except by clear, positive, undisputed evidence to the contrary. In the instant case, the testimony of both defense witnesses, Thomas and Davis, is contradicted by records of the Public Utilities Supervisor that Cab No. 209, a Plymouth, was in operation for the Cab Company on August 7 (date of plaintiff's injury); and if the car driven by Mitchell at the time carried license plates according to recollection of R. F. Haney, and the sign "Pride of Dallas" on side according to various witnesses, then it could not have been the Kaiser vehicle, but another and a different car. "We recognize the law announced in the decisions cited by the appellant, and in particular, the decision in Southwest Dairy Products Co., Inc., v. De-

frates, 132 Tex. 556, 125 S.W.2d 282, 283, 122 A.L.R. 854, wherein the Supreme Court said that it was the settled rule 'that when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension.'" Gammill v. Mullins, Tex.Civ.App., 188 S.W.2d 986, 992. But in view of the mentioned conflicts, it cannot be said conclusively, under defendant's "full disclosure," that co-defendant Mitchell was not an employee of the Company on occasion of injury or that he was then engaged in a mission beyond the course of his employment. In consequence, issues 9 and 10 relative thereto properly remained questions of fact for the jury's determination. "If the evidence is insufficient to establish conclusively that the driver was engaged in the defendant's service or business, or acting within the scope of his employment, the court may conclude that the issue as to the relation of his use of the vehicle to the defendant's business should be submitted." 2 Tex.Jur. Ten Year Supp., p. 258.

■ Point 3 argues that "It was error for the Court to commend to the jury the testimony of the witness, R. F. Haney, in his denial of having signed a statement, when she, the judge, stopped defense counsel's cross-examination in regard thereto by instructing counsel to put the statement aside." The Haneys, brothers, witnesses for plaintiff, had been recalled for further cross-examination by defense counsel relative to some signed "statement"; R. F. Haney denying the signature, saying that it was that of his brother, W. W. Haney; the latter also rejecting one signature on the paper, but as to another, saying "It could be." Counsel did not offer the paper in evidence but continued to examine the witness, apparently with reference to its

* Footnote:
   The Haneys had been eyewitnesses to the accident, this "statement" obviously descriptive of how it occurred. There was no material conflict concerning their

contents, holding the statement in hand. Objection to the procedure being made and sustained, an exception was taken by Mr. Davenport to the "court's ruling asking me to lay my paper down." While the ruling appears as an undue restriction on counsel's right of cross-examination, the line of questioning under way (See Footnote *) had no particular bearing on the points here presented for reversal; the court's action at best involving error deemed harmless.

All points of appeal, upon full consideration, are accordingly overruled and judgment of the trial court affirmed.

version of the accident; the question of Mr. Davenport just prior to the ruling complained of being with reference to a hammer that the witness happened to be holding at the time.