**J. B. WILLIAMS et al., Appellants,**

v.

**U. C. RONEY, Appellee.**

No. 3220.

Court of Civil Appeals of Texas.

Waco.

Jan. 20, 1955.

Rehearing Denied Feb. 24, 1955.

Carter, Gallagher, Roberts, Jones & Magee, Dallas, Joe Hill Jones, Ben T. Warder, Jr., Thomas H. Hight, Dallas, for appellants.

Dawson & Dawson, Corsicana, J. P. Moseley, Dallas, Wm. J. McKie, Roe, Ralston & McWilliams, Corsicana, for appellee.

HALE, Justice.

J. B. Williams and wife, joined by Earle Calame, suing individually and as next friend for his minor children, and Selma Clement, they being the appellants herein, brought this action against U. C. Roney, appellee, for the recovery of damages alleged to have been caused by the negligence of Charlie Chmelar, an employee of Roney. Mrs. Williams was driving her Oldsmobile in a northerly direction along U. S. Highway 75 when she struck Chmelar while he was attempting to walk from the east side of the highway to the west side thereof, inflicting serious personal injuries upon him. The children of Calame were riding in the Oldsmobile with Mrs. Williams. After striking Chmelar, the Oldsmobile which Mrs. Williams was driving collided with a truck belonging to Clement while the truck was

being driven in a southerly direction along the west side of the highway, and as a result of this collision each of the children of Calame sustained personal injuries, Mrs. Williams was seriously injured and the Oldsmobile and the Clement truck were damaged. By their suit appellants sought to recover from Roney for the damages resulting from the personal injuries sustained by Mrs. Williams and by the children of Calame, as well as for the damages to the Oldsmobile and the truck of Clement.

Roney answered the suit of appellants with a general denial, a special denial that Chmelar was acting in the course of his employment while attempting to cross the highway, and by numerous affirmative defenses, including pleas of contributory negligence on the part of Mrs. Williams as to the manner in which she was operating the Oldsmobile at and prior to the occurrence of the collision of which appellants complain.

Chmelar intervened in the suit and sought recovery against Mr. and Mrs. Williams for the damages which he had sustained as a result of the personal injuries inflicted upon him. He alleged that his injuries were proximately caused by various acts of negligence on the part of Mrs. Williams in operating the Oldsmobile as she did at and immediately prior to the time she caused her automobile to strike him.

The case was tried before a jury. Upon the conclusion of the evidence the court submitted certain special issues to the jury for determination. By their answers to the issues so submitted, the jury found (1) that Chmelar failed to yield the right-of-way to the automobile being driven by Mrs. Williams, (2) that such failure was negligence, (3) that such negligence "was a proximate cause of the striking of Charlie Chmelar by the Oldsmobile in question," and (4) that the failure of Chmelar to yield the right-of-way "was the sole cause of the striking of Charlie Chmelar by the Oldsmobile in question." In answer to Special Issue No. 5, the jury found that the attempt of Chmelar to cross Highway 75 at the time and on the occasion in question was not

in the course of his employment with Roney. In response to other special issues submitted, the jury found the amount of damages on account of the personal injuries sustained by Mrs. Williams, by each of the minor children of Calame, and by Chmelar, as well as the amount of the property damage to the Oldsmobile and the Clement truck. The jury exonerated Mrs. Williams of any actionable negligence, notwithstanding the finding that she was operating her Oldsmobile just prior to striking Chmelar at a speed of 60 miles per hour, and found that the collision in question was not an unavoidable accident.

In connection with Special Issue No. 5, the trial court instructed the jury that "by the term 'course of employment' is meant an act done in furtherance of the master's business and for the accomplishment of the object for which the servant was employed." Before the court's charge was submitted to the jury, appellants timely objected to the submmission of Special Issue No. 5 on the ground that the uncontroverted evidence showed conclusively that Chmelar was acting in the course of his employment with Roney. After the verdict had been returned, appellants duly filed and presented their motion to disregard the finding of the jury in response to Special Issue 5 on the ground that the undisputed evidence established, as a matter of law, that Chmelar was acting in the course and scope of his employment with Roney at the time and place therein inquired about, and they prayed for judgment in their favor upon the remaining findings of the jury after so disregarding the finding on Special Issue No. 5. The trial court overruled the motion of appellants and rendered judgment on the verdict as a whole that appellants take nothing by their suit, that Chmelar take nothing by his plea in intervention and that Roney go hence.

Appellants predicate their appeal upon the contention that the trial court erred in refusing to render judgment in their favor for the amount of their found damages because they say the evidence adduced in the court below shows conclusively, as a

matter of law, that Chmelar was acting in the course of his employment with Roney while attempting to walk across the highway at the time he was struck. On the other hand, Roney insists that the evidence was sufficient to warrant the jury in concluding that Chmelar had turned aside from the performance of the duties of his employment while attempting to walk across the highway. Under other counter points in his brief, Roney contends that in no event could judgment be properly rendered against him in this cause, even though the finding of the jury in response to Special Issue No. 5 be disregarded, because he says, among other things, that there was no finding that any negligence of Chmelar was a proximate cause of the injuries and damages sustained by appellants.

■ It is elemental that in passing upon the contention of appellants, this court should consider the evidence before us, and all reasonable inferences and deductions that may properly be drawn therefrom, in the light most favorable to sustain the verdict and judgment under review. When thus considered, if there is any competent evidence of probative force tending to show that Chmelar, in his attempt to walk across the highway, had turned aside from the prosecution of Roney's work to engage in an affair wholly his own, then in that event the judgment of the trial court should be affirmed, because, under such circumstances, it could not be said that reasonable minds might not differ in concluding from the evidence as a whole that Chmelar was acting in furtherance of Roney's business and for the accomplishment of the object for which he was employed at the time when he failed to get out of the way of the onrushing Oldsmobile.

■ In the case of Galveston H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 1074, 10 L.R.A.,N.S., 367, decided by the Supreme Court of Texas in 1906, the Court said: "* * * when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone. * * * When he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such actions." The holding in this case has been cited and followed in many later decisions and the foregoing quotation from the opinion of the Court is an apt statement of the settled law as it exists in Texas at this time. See: 7 Tex.Jur., Ten Year Sup., p. 232 and authorities.

The evidence in the case before us shows that Roney was engaged in the appliance business. He operated one store in Ennis and another in Corsicana. The distance between these towns is approximately 19 miles. Chmelar was employed by the manager of Roney's store at Ennis under a verbal contract of hire. There were changes in the duties of his employment from time to time. Although there are conflicts in the evidence as to the exact duties of his employment and the hours he was required to be on duty on the day when this collision occurred, there is testimony to the effect that Chmelar was working as a service man at that time; that his working hours were from 8:00 a. m. to 6:00 p. m., with one hour off duty for his noon meal; that he had no fixed hour for lunch, but was expected to eat his noon meal at such time and place as would least interfere with a proper discharge of the duties of his employment. There is also evidence to the effect that on the morning of the accident, Chmelar went from Roney's store in Ennis to the home of a customer who lived about six miles from town, to inspect a leaky water heater; that he disconnected the heater and took it to town where he was instructed by the manager of the store in Ennis to take it to the Corsicana store and there exchange it for a new heater; that Chmelar departed from Ennis for Corsicana about 9:30 or 9:45 a. m., and after waiting around the Corsicana store for sometime, he exchanged the defective heater for a new one and left Corsicana

in the early afternoon on his return trip to Ennis without having eaten his lunch. When Chmelar reached a point opposite what is known as Red Top Cafe on his return trip going north over Highway 75 from Corsicana to Ennis, he pulled the truck which he had been driving for Roney completely off the paved portion of the highway and onto the gravel shoulder near the bar ditch on the east side of the highway where he parked it. According to the testimony of Chmelar, his purpose in stopping the truck was to go inside the cafe across the highway in order to get something to eat and drink. After closing the door to the truck, he approached the paved portion of the highway where, he testified, he looked to his right, then to his left, and seeing no car approaching from his left, he began walking across the highway. Chmelar testified that he did not remember being struck and Mrs. Williams testified she did not remember anything about the accident.

The evidence is indefinite as to the exact time when Chmelar arrived at or departed from the Roney store in Corsicana, or as to the time when the accident occurred, the evidence indicating, however, that the accident happened sometime about 2:00 o'clock in the afternoon. Chmelar testified that when he arrived at the store in Corsicana, the manager was not in and as he had to secure permission to exchange the leaky heater for a new one it was necessary for him to wait for the manager to return and that, while he was waiting for the manager to return to the store, he went to a restaurant in order to get his lunch, but, because the restaurant was crowded, he did not order anything to eat. The store manager testified in substance that after Chmelar picked up the new heater, it was his duty to return with it to the house of the customer where it was to be installed; that the stop which Chmelar made on the return trip was "definitely personal;" and that "no stop he could have made could have done anything other than to delay reinstalling the heater for the customer; any delay would have increased the length of time they would have been without the con-

venience of a water heater, which would have been harming our organization rather than furthering its interests."

■ Any effort on our part to set forth the substance of all the testimony given by the various witnesses relating to evidentiary issues involved in determining whether Chmelar was or was not acting in the course of his employment with Roney at the time of this accident, would extend this opinion far beyond the length of propriety. It must suffice to say that after due consideration of all the evidence before us, we have concluded that it is sufficient to support a reasonable inference that Chmelar turned aside from the prosecution of Roney's work to engage in an affair wholly his own when he got out of Roney's truck and left it in order to go across the highway to the Red Top Cafe; that his attempt to cross the highway was for the sole purpose of satisfying his personal desire to partake of food and drink; and that, while attempting to cross the highway for that purpose, he was not performing any act in furtherance of Roney's business or in the accomplishment of the object for which he was then employed by Roney. Therefore, we cannot say the evidence shows conclusively, as a matter of law, that Chmelar was acting in the course of his employment with Roney while attempting to walk across the highway at the time he was struck, or that the trial court erred in rendering judgment on the verdict of the jury that appellants take nothing against Roney. McKeage v. Morris & Co., Tex. Civ.App., 265 S.W. 1059; Crabb v. Zanes Freight Agency, Tex.Civ.App., 123 S.W.2d 752 (er. dis. judg. cor.); Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854; Texas Power & Light Co. v. Evans, Tex.Civ. App., 225 S.W.2d 879; Robert R. Walker, Inc., v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506. See also the following cases decided under the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.; London Guaranty & Acc. Co. v. Smith, Tex. Civ.App., 290 S.W. 774 (er. ref.); Parker v. Royal Ind. Co., Tex.Civ.App., 59 S.W.2d 243; Banks v. Commercial Standard Ins.

Co., Tex.Civ.App., 78 S.W.2d 660 (er. dis.); Smith v. Texas Employers' Ins. Ass'n, Tex. Com.App., 129 Tex. 573, 105 S.W.2d 192; Jasper v. Texas Employers Ins. Ass'n, Tex. Civ.App., 206 S.W.2d 646.

Accordingly, each of appellants' points of error is overruled and the judgment of the court below is affirmed.