**HOUSTON NEWS CO. et al. v. SHAVERS.**

**No. 1430.**

Court of Civil Appeals of Texas. Waco.

Oct. 19, 1933.

Rehearing Denied Nov. 16, 1933.

John F. Battaile, of Houston, for appellants.

Earle M. Manint and John T. Garrison, both of Houston, for appellee.

ALEXANDER, Justice.

This suit was brought by Mrs. Alma Shavers against Houston News Company, Texas News Company, and Home Indemnity Company of New York. The Houston News Company and the Texas News Company appear to be the same concern, doing business under different names. The action against Houston News Company and Texas News Company was in tort to recover damages for personal injuries sustained by plaintiff as the result of a collision which took place in the city of Galveston between a truck owned by Houston News Company and alleged to have been driven by its agent, and an automobile driven by Mrs. Anna R. Lake and in which the plaintiff was riding as a guest. The action against the Home Indemnity Company of New York was based upon a contract of indemnity insurance alleged to have been issued by said defendant for the benefit of the other two defendants and those injured by their automobiles.

A trial by jury resulted in a verdict and judgment for the plaintiff for the sum of $18,000. The defendants appealed.

The appellants contend that the trial court erred in refusing to give an instructed verdict in their behalf and in entering a judgment against them upon the verdict of the jury, because the evidence was insufficient to establish that the driver of the defendants' truck was acting within the scope of his employment as defendants' agent at the time of said collision. It is their contention that Earl Belanger, who was driving the truck which belonged to the Houston News Company at the time of the collision, was using said truck on an errand purely his own and that the finding of the jury that he was acting within the scope of his employment as a servant of the Houston News Company is wholly unsupported by the evidence.

The plaintiff called as a witness the defendants' truck driver, Earl Belanger, who testified on direct examination: "That he was in the employ of the defendant Houston News Company on the day of the accident; that his duties were to deliver magazines; that he delivered the magazines to drug stores and wholesale dealers at Houston, Galveston and Texas City; that the truck he used was the property of the Houston News Company; that the accident occurred on Saturday afternoon around 4 P. M."

On cross-examination said witness testified: "That the accident occurred on Saturday afternoon, November 1, 1930; that he worked for the News Company only five and a half days per week—working only a half day on Saturday; that he got off from work on Saturdays at 12 o'clock, and on the day of the accident he had quit work and gone home, where he arrived about 12:30 noon, parking in front of his house; that he was off duty; that when the accident occurred he and his wife and a little child five years old were driving around 'going nowhere in particular', but that they left home with the intention of going and getting groceries, going from their home on Sixth Street to the Beach Boulevard, and were traveling west on the boulevard when the accident occurred; that they were just driving out the boulevard before going to the grocery; that after the accident Mrs. Belanger drove the truck on home; 'I got off of work around noon and went home to get my wife; started out to the store to get some groceries, and it was a pretty day, and we thought we would take a little ride before we went to get the groceries.' That the truck was kept in the garage at his home; that the rent on the garage where he kept the car was paid by the News Company; that Mr. Rhinelander was the manager of the company at Houston, and that he works under him. * * * That he had charge of the truck and that it was

usually kept in his garage on Saturdays and Sundays; that at and prior to the time of said collision he was not allowed to use the truck on Saturday afternoon or Sundays to deliver magazines or for any other purpose, but that at the time of the trial he was allowed to use such truck for the purpose of delivering magazines on Saturday afternoon."

Mrs. Belanger, the wife of the truck driver, called by defendants, testified substantially to the same effect, corroborating the driver in his testimony as to the errand upon which they were at the time of the accident. She testified: "That Earl had come home from work for the day and 'we were on our way for groceries and we took a ride on the way;' that the accident occurred about 4 o'clock Saturday afternoon; that Earl (the driver) came home about 12 o'clock noon and stayed at home until about 3:30. 'We got in the truck and taken our ride and the accident happened at 4 o'clock.' "

Mr. Rhinelander, the manager of the Houston branch of the defendant company, called by defendants, testified as follows: "That he was manager at the time of the accident, his territory including Houston, Galveston and Beaumont; that Earl Belanger worked for and under him and his duties were to deliver and pick up magazines and collect bills; that the truck he uses was furnished by the Houston News Company; that the truck was to be used solely for the purpose of delivering and picking up magazines; that Belanger had no authority to use it for personal errands; that Belanger has orders not to use the truck for any other purpose except company business and only during business hours; that Belanger was on duty for the company five and a half days a week, getting off Saturdays at 1 o'clock; that the garage in which the truck was kept at Galveston was rented by the News Company."

On cross-examination by plaintiff he testified: "That the Houston News Company was paying for the truck and paying for the garage; that the truck was supposed to be kept in the rear of the Belanger home; that the truck was supposed to be put up at 5:30 in the evening and on Saturdays at 1 o'clock in the afternoon; that he had a right to use the truck if it was on business for the company. That he never heard of his (Belanger) taking his wife out riding and never heard of it; that he had no right to take the truck and use it for going on errands like getting his groceries and things of that kind; that if he had been doing that it was without Rhinelander's knowledge; that if he was or had been using that truck every Saturday evening going out and getting his groceries for months he had no right to do so; that he was instructed not to carry any passengers— that he 'couldn't carry passengers and the

386

truck should be used for company business only;' that he had the right to use the truck on company business; that he doesn't know whether Belanger was on a joy ride or delivering merchandise when the accident occur-red."

The foregoing testimony is substantially all of the testimony introduced to show what the truck driver's errand was on the occasion when the collision took place.

In order for the plaintiff to recover damages for the negligent acts of the defendants' servant, it was necessary, of course, for the plaintiff to establish that such servant at the time of the commission of such negligent acts was acting for and on behalf of the defendants as his master and within the scope of his employment, and not merely on a personal errand of his own. If, at the time of said collision, the driver of said truck had completed his day's labor for the news company and turned aside from the prosecution of his master's work to engage in an errand wholly his own, the news company was not responsible for any damages caused by his negligent acts. Galveston, H. & S. A. R. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367. The evidence is wholly insufficient to establish that he was engaged in his master's business at the time of said collision. Evidence that the truck with which the injury was committed belonged to the news company and that it was being driven by one regularly in its employment, in the absence of evidence to the contrary, raised a presumption that such servant was engaged in the news company's business at the time of such collision. Studebaker Bros. Co. v. Kitts (Tex. Civ. App.) 152 S. W. 464. This, however, is a mere rule of procedure and the presumption vanishes when positive evidence to the contrary is introduced. The presumption grows out of the fact that not infrequently the evidence necessary to establish the character of the mission in which the servant was engaged is exclusively within the possession of the defendant. The effect of the rule is to "smoke out" the defendant and to compel him to disclose the true facts within his knowledge. When, however, he discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce other evidence or his cause fails. Bond v. St. Louis-San Francisco R. Co., 315 Mo. 987, 288 S. W. 777; Murphy v. Tumbrink (Mo. App.) 25 S.W.(2d) 133; Caswell v. Maplewood Garage, 84 N. H. 241, 149 A. 746, 73 A. L. R. 433. In this case the defendants made a clean and clear disclosure of all of the evidence apparently within their possession. All those who presumably would know the facts were introduced as witnesses. All of the evi-

dence so introduced was positive to the effect that the servant at the time of the collision was engaged in a mission purely his own. The burden of proof was upon the plaintiff and she was not entitled to recover without producing some evidence tending to establish a state of facts under which the defendants would be liable. We think the evidence wholly insufficient to support the verdict of the jury and that the court should have given an instructed verdict for the defendants.

This is a companion case with that of Texas News Company v. Lake (Tex. Civ. App.) 58 S.W.(2d) 1044, in which Mrs. Lake, who was a companion with Mrs. Shavers and injured in the same accident, recovered a judgment in the lower court against the news company for damages for the injuries so sustained by her. The Court of Civil Appeals at Galveston reversed and rendered that judgment on account of the insufficiency of the evidence and the Supreme Court dismissed an application for writ of error. There is no material difference between the evidence in that case on the issue here under consideration and the evidence in this case. Upon the authority of that decision, the judgment of the trial court is reversed and judgment is here rendered for the appellants.