TEXAS POWER & LIGHT COMPANY V. W. B. DENSON.

No. 6215.   Decided April 10, 1935.
Rehearing overruled June 12, 1935.
(81 S. W., 2d Series, 36.)

*Wood & Wood* and *Dan Moody,* all of Austin, for plaintiff in error.

An employer is not responsible for the negligenct act of an employee, who at time of collision was operating his own automobile, which was his personal property and operated by him for his own comfort and convenience, and contrary to the advise and consent of his employer, although said employee was at the time returning to the office of the company from making a sale of washing machine for the company. That in so doing he was not acting within the scope of his employment. 6 Labatt's Master & Servant, 6888, sec. 2282; Goodman v. Kennell, 3 Car. & P., 167; Kennedy v. Union Charcoal & Chem. Co., 156 Tenn., 666, 4 S. W. (2d) 354; Dixie Motor Coach Co. v. Swanson, 41 S. W. (2d) 436; 2 Blashfield Cyc. of Auto. Law, 1438, 1445.

*Winbourn Pearce,* of Temple, *Chambers & Gillis,* of Cameron, for defendant in error.

The master is liable in damages for the negligent act of the servant, if at the time of the accident the servant is engaged in the performance of the master's business, and the manner of his performance does not affect the question of liability. International & G. N. R. R. Co. v. Anderson, 82 Texas, 520, 17 S. W., 1039; International & G. N. Ry. Co. v. Cooper, 88 Texas, 607; 32 S. W., 517; Cooper v. Knight, 147 S. W., 349; 2 Blashfield Automobile Law, 1385; 39 C. J., 1284, secs. 1473-4.

MR. PRESIDING JUDGE RYAN of the Commission of Appeals delivered the opinion for the court.

W. B. Denson sued to recover damages, including doctors' bills, hospital bills and other expenses, resulting from an injury sustained by his wife, also for injury to his automobile, because of a collision between an automobile owned by him, operated by his wife, and an automobile operated by one Joe Deaton, an employee of the Texas Power & Light Company. Deaton owned the car he operated.

Denson recovered judgment for $6683.35, which was affirmed by the Court of Civil Appeals. 45 S. W. (2d) 1001.

No complaint is made of the amount of the judgment nor of Denson's right to recover because of Deaton's negligence, the only issue being whether the master is liable, the defendant's theory being that Deaton caused the injuries while operating his own automobile, thus using a means in performing

the duties for which he was employed, not authorized by the master and which he was instructed by the master not to use.

Deaton was sent by the Company's Dallas office to the office at Cameron, Texas, some ten days before the collision, as local salesman and demonstrator of electrical accessories, such as washing machines, radios and electric irons. He was under complete control of John Young, the Company's manager at Cameron.

A few days after beginning his employment at Cameron Deaton purchased individually the car in question; the Company paid no part of the expense of operating it, and exercised no control over it.

On the occasion in question, the Company had delivered on its truck an electric washing machine at the residence of a Mr. Boedeker situated about one and one-half miles from the Company's place of business. Deaton went out in his own car to demonstrate it; he returned to the Company's down town office in his car to procure a connecting cord and then to the residence, where he demonstrated the machine, effected a sale thereof, procured the purchaser's check payable to Texas Power & Light Company, and was on his way back to the Company's office to turn it in, when the collision occurred.

Young, the Company's manager, testifying as to Deaton's duties, said:—"There was nothing in his employment that required him to use an automobile. There was nothing in his employment that called upon him to operate or drive an automobile for the Company; or to furnish one for himself or the defendant company. In using his automobile, he was not using it of necessity in the performance of his duties to the company, but was using it for his own personal convenience and comfort. The use of an automobile was not required and was not necessary to the performance of his duties."

On cross-examination he testified: "Yes, sir, I was in town the day the accident occurred; I just stated I had not seen Mr. Deaton that day; that morning; I came down to the office after he had gone out. I did not know where he had gone and did not know who he had gone to see. He was a Salesman for my Company and demonstrator. In going out to make sales and make demonstrations he was acting in furtherance of his duties for the Company. That is true in going out on this particular day, to make the sale and demonstration at Mr. Boedeker's he was acting in the discharge of his duties, and in the furtherance of the business of the Defendant. In re-

turning from there with the money that he collected he was acting in the discharge of his duties, and in the furtherance of the business of the Defendant."

Also:—"I told him when I saw him driving a car around town that I thought he could get along better if he did not have a car. I suggested to him that I noticed that young men who did have a car spent some time riding around when they could be attending to their business, or words similar to that. That was my customary and usual way in telling a man that I did not want him to have a car, or did not want him to do what he was doing. Without abruptly telling him not to do the thing when I told him in that way I expected he would carry out my wishes. So far as I know it was complied with in this case. He kept the car; I saw him riding in it; he kept it after the accident and still has it today, I think; I suppose he still rides in it. I do not know that he goes to see customers and prospects in that car. I do not know that he uses that car to go out to see prospects and see customers. I do know that he used the car for that purpose on this one occasion. I never knew of him going to Buckholts or to Pettybone or other outside towns in his car. I do not know of his using his car for any reason except his own personal use."

On redirect examination:—"I discussed his duties with him. I did not tell him in that discussion that he would be expected to have an automobile; I did not tell him that he would be expected to operate an automobile. There was nothing in his duties or the performance of his duties that would require him to have an automobile. There was nothing in his employment or in the performance of his duties that the Company would furnish a car or would pay any expenses of a car or expect him to furnish a car. I stated to Mr. Pearce that the only time that I knew of him using the car in the Company's business was on the occasion of this collision. I did not give him permission to use the car on that occasion or on any occasion and I did not direct him to use the car. I never did at any time direct Joe Deaton to use that automobile or any other automobile in my discussion with him of his duties which he was employed to render for the company."

Deaton testified:—"When I came here to Cameron there was nothing said to me about the Texas Power & Light Company furnishing me with an automobile. There was nothing said to me about hiring me to drive an automobile for them. The Texas Power & Light Company has not furnished me with any automobile at any time. I worked here in Cameron without

an automobile for about six days. After I had been here working for about five or six days I just went and bought an automobile myself. * * *

"Mr. J. L. Young is the only man here in Cameron that had any direction over my work here; he is the General Manager of the Texas Power & Light Company here at Cameron. I have been working under him since I have been here in Cameron. There is no one here but Mr. Young who gives me instruction as to what to do and what not to do. Mr. Young was not in Cameron when I first got here; he came in on the following Saturday after I got here. He was off on a vacation when I first got to Cameron. Mr. Young came back to Cameron on Saturday the 13th of September after I had arrived here on the 6th; Mr. Young had been off on his vacation immediately prior to that. He was the Manager of the Texas Power & Light Company here before September 6th, and at the time was just out on his vacation, and returned from his vacation on September 13th. After I came here to work and after Mr. Young came back from his vacation he made a statement to me about my automobile, and about the use of it. He said that I would do better if I did not have an automobile; that I would make more sales. He said that he had rather I would not use an automobile in my work; that I would make more sales without an automobile. I do not remember the exact date he gave me those instructions, but four or five days after he came back. It was before the time of this collision."

On cross-examination he testified:—"It is true that I sometimes used my car in going to see people to interest them in the products of the Company, such as washing machines, radios, irons or whatever we had to sell; I sometimes used my car and I sometimes used their car; that is correct. I sometimes used my car and sometimes used their car in going to see prospects and in making deliveries. The day of the accident, and before the accident, and after the accident, I sometimes in making sales and interesting prospective customers, I would sometimes go in my car and sometimes go in their car. On the day of the collision I had gone out to see Mr. Boedeker and had gone out there for the purpose of interesting him in a washing machine and making a sale to him for the Defendant Company. That was in line of my regular duties as their Salesman. I sometimes walked out to see a prospect. I did my work out there that day in the usual way; that was the usual and ordinary way I did my work, and on this occasion I went out there in my car. I had no personal business out at

Mr. Boedeker's except my business with the Texas Power & Light Company. When I got out to Mr. Boedeker's I found out that there was a cord to the washing machine that had not been brought out by the man that delivered it out there; when I first got out there I found the washing machine nor the cord either had arrived, but when the washing machine did finally arrive I found that they had not sent the cord to attach it to the socket with; that was the extension cord. To the best of my recollection, I believe I went back to town to get that cord myself. I went back to town in my car and went to the office of the Defendant Company and got the cord and carried it back out to Mr. Boedeker's. While the washing machine was in operation at Mr. Boedeker's I left there in my car to go and see another party to interest them in a machine. I do not remember who the other prospect was; anyway I left Mr. Boedeker's in my car; I do not think it was Mrs. McDermott I went to see. I came back to Mr. Boedeker's and finished the washing and stayed there until I made a sale of the washing machine to Mr. Boedeker, and until Mr. Boedeker gave me a check for the washing machine payable to the Texas Power & Light Company. I took the check and I was on my way to the office with it when this collision occurred. * * * I have no particular place to park my car in the daytime; I parked it wherever I could find a parking space in the daytime. I generally park my car somewhere along by the side of the Palace of Sweets, and sometimes I would park it right in front of the Texas Power & Light Company. I parked it convenient to the Company's office wherever I could find space; I parked right in front a good deal. I parked sometimes behind the Company's office. It is not my business to use that car in seeing the customers. Seeing customers is my business, but not to use my car in seeing them. I could not see more customers by using my car than by going afoot; I could see more people by going afoot than I could by using the car. I would not see more customers going afoot if the customers lived three or four miles apart, but all of our customers live right around in town. In seeing customers down in town the car is not of much use to me; the car helps me out in seeing customers out over town. If the customers were all scattered out the car would be of benefit to me as well as to the Defendant Company. In going in the car it saves walking and it saves time too. I said I could save time by going in a car to see the customers."

On redirect examination:—"The usual custom of the Company was to deliver merchandise in their truck; the trouble

shooter delivered merchandise. I went with him sometimes in the company car to deliver the merchandise. It was delivered in the Company's car, and I sometimes helped him deliver it; I just went along to help him take it out. Mr. Young, my employer, never ordered me to go and help him make a delivery; Mr. Young never authorized me to use my automobile or the Company's automobile. When I rode in the Company's automobile at any time, I do not know whether Mr. Young knew about it or not; he has seen me, I suppose. I suppose he did."

And on recross-examination:—"I said I suppose he saw me; I said I guess he has seen me in the automobile. I suppose he has seen me in their cars and in my car, I don't know. I could not tell you whether Mr. Young ever saw me in the cars; I did not try to keep it from him, but still I did not go to him and tell him, because he had asked me not to use the car. I did not try to keep it from him and neither did I go to him and tell him. I think he has seen me in my car and the other cars too."

The rule in this State is that if the act complained of is done within the scope of the general authority of the servant, in furtherance of the master's business and for the accomplishment of the object for which the servant is employed, the master is liable. International & G. N. Ry. Co. v. Anderson, 82 Texas, 520, 17 S. W., 1039; International & G. N. Ry. Co. v. Cooper, 88 Texas, 610, 32 S. W., 517; Burnett v. Oechsner, 92 Texas, 588, 50 S. W., 562; Buick Automobile Co. v. Weaver, 163 S. W., 549, writ of error refused; Cooper v. Knight, 147 S. W., 349; Texas Trunk Ry. Co. v. Johnson, 75 Texas, 158, 12 S. W., 482; Hays v. Houston & G. N. R. R. Co., 46 Texas, 280.

This rule is in accord with that announced by the Supreme Court of the United States in Philadelphia & R. R. R. Co. v. Derby, 14 How. (55 U. S.), 468, and in Singer Mfg. Co. v. Rahn, 132 U. S., 518, and in 39 C. J., 1285.

It is said, 39 C. J., 1291:—"The test as to liability of the master is whether the servant was guilty of negligence in the doing of his master's work. It is not essential that the negligent act or ommission complained of should have been expressly authorized by the master, or that he should have been present when the act or omission complained of was committed, or that he should have had knowledge of the act or omission which caused the injury. And so long as the act is within the scope of the servants employment, it is immaterial, as affecting the master's liability, what the motive of the servant was."

So here, Deaton was engaged in the doing of his master's work and in the course of his employment.

But it is contended that this rule does not apply to acts of the servant in using his own automobile when such use is forbidden or not authorized by the master.

Without deciding that contention as an abstract proposition of law, we think the evidence is not sufficient to support it, in this case. The evidence does not show that Young, the manager, expressly forbade the use of Deaton of his car; it goes simply to the extent of expressing a wish or suggestion that the car be not used by Deaton in soliciting business for the Company. Deaton so treated the matter; his testimony is that while Young so instructed him four or five days after he returned from his vacation and before the date of the collision, he (Deaton) sometimes used his car and sometimes used the Company's car in going to see prospects and in making deliveries, before the accident, on the day of the accident, and after the accident; on the day of the accident he had gone out to see Mr. Boedeker for the purpose of interesting him in a washing machine and making a sale to him, for the company; this was in the line of his regular duties. He said that he did his work out there in the usual way and on that occasion he used his own car.

It will not be denied that a employe who is called to go a mile and a half out of town to demonstrate a washing machine for his employer is adopting means reasonably directed to the end of his employment when he steps into his car for the admitted purpose of saving time and of doing better and quicker service for his employer.

The Court of Civil Appeals correctly decided the case and its judgment affirming that of the District Court is affirmed.

Adopted by the Supreme Court April 10, 1935.

Rehearing overruled June 12, 1935.