Rowena Lindsey HUDIBURGH et al., Appellants,

v.

Tony PALVIC, Appellee.

No. 4935.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 16, 1954.

Rehearing Denied Jan. 5, 1955.

96

Fisher, Tonahill & Reavley, Jasper, for appellants.

Faver & Barnes, Jasper, for appellee.

ANDERSON, Justice.

The appellee, Tony Pavlic, sued the appellants, Rowena Lindsey Hudiburgh and Harvey Adams, to recover damages alleged to have been sustained by him as a result of an automobile collision on April 6, 1951, between his automobile, which he was driving, and an automobile owned by Mrs. Hudiburgh but driven by Adams. Mrs. Hudiburgh was sued upon the theory that when the collision occurred Adams was acting within the course and scope of

his employment as her employee. Upon a jury's special-issue verdict, supplemented by the court's finding as to the amount of property damage suffered, a joint and several judgment for $2,850 was rendered in favor of the appellee against both Mrs. Hudiburgh and Adams.

The collision occurred in the southwest quadrant of the intersection of Houston and Zavalla Streets in Jasper, Texas. Houston Street, which is 50 feet wide, runs east and west and is a link in a through highway. Zavalla Street runs north and south. The plaintiff was proceeding southward along it. The defendant Adams was proceeding eastward along Houston Street and so, in approaching the intersection, was to the plaintiff's right side. There were no traffic lights, stop signs or other traffic controls at the intersection. The plaintiff's was the first of the two automobiles to enter the intersection, and by the time it was struck its front end had almost reached the south margin of Houston Street. Its speed while passing through the intersection was estimated to be from eight to twelve miles per hour. The plaintiff testified that just before the collision the defendant Adams appeared to be looking to his (Adams') right. Adams himself testified that as he approached and entered the intersectioin he was looking straight ahead, to the right of the center line of Houston Street, and that when he first saw plaintiff's automobile its front end was about to said center line. He estimated that the two cars were then within thirty or forty feet of one another. He applied the brakes on the car he was driving, swerved to the right or toward the south, the direction in which plaintiff was traveling, and the front end of his automobile struck plaintiff's automobile about midway of the latter's right side.

The jury found, in substance, that when the collision occurred Adams was in the employ of Mrs. Hudiburgh, was driving her automobile with her consent, and was acting in the course of his employment; that Adams failed to keep a proper lookout, and that this was negligence and a proximate cause of the collision; that Adams failed to yield the right-of-way, and that this was negligence and a proximate cause of the collision; that Adams failed to steer the Hudiburgh automobile to the left, but not that this was negligence. It failed to find from a preponderance of the evidence that Adams was driving at an excessive rate of speed. The plaintiff was not found to have been negligent in any particular. The collision was found not to have been the result of an unavoidable accident.

The first question for review is that of whether there was any evidence from the plaintiff's point of view to raise a fact issue for the jury as to whether Adams was acting within the course and scope of his employment as Mrs. Hudiburgh's employee when the collision occurred. The question was raised by Mrs. Hudiburgh in the trial court by both a motion for directed verdict and a motion for judgment despite the verdict. Both motions were overruled, and each of these rulings is now assigned as error.

Aside from proof of certain physical facts and of Mrs. Hudiburgh's ownership of the automobile involved, which is undisputed, the evidence bearing on the point was supplied altogether by the uncorroborated testimony of the defendant Adams, who was called by the plaintiff to testify under the adverse witness rule—i. e., Rule 182, Texas Rules of Civil Procedure.

Disregarding portions of his testimony which may have tended to show that he was employed by Mrs. Hudiburgh's son-in-law rather than by Mrs. Hudiburgh herself, Adams testified to substantially the following: He had been regularly employed by Mrs. Hudiburgh during the four years preceding the date of the collision, and was in her employ on that date. He was primarily employed to work about the yard and house. Though not employed as a chauffeur, he had a chauffeur's license, and when directed to do so he drove Mrs. Hudiburgh's automobile on errands for her. Shortly before the collision Mrs. Hudiburgh directed him to take her grand-

daughter to school in the automobile and then return directly to the Hudiburgh home. In order to perform this mission, it was only necessary that he proceed south about half a block along a street that ran by the Hudiburgh garage, turn west and proceed along College Street a distance of approximately four blocks to the schoolhouse, and then return along the same route; an overall distance of some ten blocks. Since both the Hudiburgh residence and the schoolhouse were situated west of the business district of Jasper, it was not necessary that he pass through the business district in performing his assignment. He drove directly to the schoolhouse by way of the route above mentioned, but did not return to the Hudiburgh residence by the same direct route. Instead, after discharging his passenger at the schoolhouse, he proceeded by way of Houston Street—a street that parallels College Street, but is two blocks south of it—up to, through, and on east of the courthouse square, which is the hub of the business district of Jasper. The collision occurred one block east of the courthouse square, or approximately seven blocks east of the schoolhouse. At that immediate time—still according to his testimony—Adams was on his way to a filling station which was situated a block east of the scene of the collision, for the purpose of purchasing flashlight batteries for his own use; intending to procure the batteries, carry them to his residence, which was situated about three-fourths of a mile south or southeast of Jasper, and install them in his flashlight. He disclaimed any intention of using his flashlight in connection with his work for Mrs. Hudiburgh, and denied that he had ever used it in that connection. He also denied that in going for the batteries he was acting with Mrs. Hudiburgh's knowledge or consent, and said that he was acting in disregard of her instructions that he return straightway from the schoolhouse to her residence.

The only evidence, therefore, tending to show that at the time of the collision Adams was acting within the course and scope of his employment as Mrs. Hudiburgh's employee consists of the combination of circumstances that he was regularly employed by her, was driving her automobile, and had been sent by her on a mission from which he had not yet returned to the base to which he had been directed to return.

The appellee argues that these facts, standing alone and unaided by presumptions, are sufficient to raise a fact issue for the jury on the question. He also argues that they raise a presumption that Adams was acting within the course and scope of his employment, and that this presumption was not as a matter of law rebutted or overcome by the uncorroborated testimony of Adams, he being an interested witness, and the jury being at liberty to disregard his testimony. On the other hand, the appellants argue not only that appellee failed to discharge the burden of proving that Adams was acting in the scope of his employment, but that the evidence conclusively establishes that Adams had abandoned the mission on which he had been sent and was on one exclusively his own when the collision occurred.

 In the absence of evidence to the contrary, the fact that Adams was driving Mrs. Hudiburgh's automobile, together with the fact that he was regularly employed by her, was unquestionably sufficient to raise a presumptioin that he was acting within the course and scope of his employment when the collision occurred. Houston News Co. v. Shavers, Tex.Civ.App., 64 S.W.2d 384, writ refused; Lewis v. J. P. Word Transfer Co., Tex.Civ.App., 119 S.W.2d 106, writ refused; Empire Gas & Fuel Co. v. Muegge, Tex.Com.App., 135 Tex. 520, 143 S.W.2d 763, opinion adopted. However, we are unable to agree that this presumption was not rebutted or dispelled by the uncorroborated testimony of the defendant Adams. His testimony, insofar as it bears on this point, was clear, positive and uncontradicted; and we think that in Empire Gas & Fuel Co. v. Muegge, supra, it was impliedly held, if not actually so, that this kind of evidence, even though supplied by a party at interest, dispels the

presumption or prevents it from being indulged. We think also that this is the only conclusion that will harmonize with certain principles of our law that are too well established to permit of argument; for example, the principles that: (1) The burden of persuading the trier of the facts that the servant was acting in the scope of his employment was on the plaintiff. Brown v. City Service Co., Tex.Com.App., 245 S.W. 656, opinion adopted. (2) This burden did not shift to the defendant during the progress of the trial. Grieger v. Vega, Tex.Sup., 271 S.W.2d 85, 89. (3) The presumption "is not 'evidence,' and, when met by rebutting proof, is not to be weighed by the jury as evidence in arriving at a verdict", and it is "not to be regarded as having raised an issue or issues of fact for the jury's determination" when it is met by "positive rebutting proof." Empire Gas & Fuel Co. v. Muegge, supra. (4) The facts giving rise to the presumption— i. e., ownership of the offending vehicle, plus regular employment of the driver— are not enough, standing alone and unaided by the presumption, to carry the issue to the jury. Houston News Co. v. Shavers, supra; Lewis v. J. P. Word Transfer Co., supra; Texas News Co. v. Lake, Tex.Civ. App., 58 S.W.2d 1044, writ dismissed. Although not discussed in them, the proposition here stated was necessarily passed upon in each of these cases, because in each either a judgment in favor of the defendant on a directed verdict was affirmed, or a judgment in favor of the plaintiff was reversed and judgment was rendered in favor of the defendant.

In the light of these established principles, we are compelled to the conclusion that the only function of this particular presumption is that of placing upon the one against whom it operates the burden of producing sufficient contrary evidence to avoid an instructed verdict. A more far reaching function can scarcely be ascribed to it unless the presumption is either given weight as evidence to be considered by the trier of the facts, or else is given the effect of shifting to the person against whom it operates the burden of producing contrary evidence which the jury believes—in other words, the effect of shifting the burden of persuasion on the issue. Plausible reasons for giving it the latter effect, or at least for holding that it can only be rebutted by evidence which the jury does not affirmatively disbelieve, might well be advanced; but the proposition that the burden of persuasion does not shift, as well as the proposition that the presumption is not evidence, is too well established to permit of any such innovation.

However, the mere fact that it was sufficient to rebut or dispel the presumption that he was acting within the course and scope of his employment does not mean that Adams' testimony may be accepted as conclusively establishing the contrary— i. e., as conclusively establishing that Adams was not acting within the course and scope of his employment. Despite the holding in Boydston v. Jones, Tex.Civ.App., 177 S.W. 2d 303, Adams being a party at interest, we think that in the absence of some corroborative evidence the jury was at liberty to disbelieve and disregard all or any part of his testimony. Simmonds v. St. Louis, B. & M. R. Co., Tex.Com.App., 127 Tex. 23, 91 S.W.2d 332, 333, opinion adopted; Texas Employers' Ins. Ass'n v. Roberts, Tex.Com.App., 135 Tex. 123, 139 S.W.2d 80, 84, opinion adopted. Therefore, with the particular presumption rebutted or dispelled, we are still confronted with the question of whether, unaided by the presumption, the evidence was sufficient from the appellee's point of view to carry the issue to the jury.

In considering this question, it must be borne in mind that the mere right of the jury to disbelieve Adams' testimony did not authorize it to believe the opposite of what his testimony imported. Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378; Texas & Pac. R. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68, 72. In consequence, as tending to prove that Adams was acting in the course and scope of his employment, we still have only the three circumstances mentioned earlier,

unaided by the presumption that has been discussed; i. e., the circumstances that Adams was regularly employed by Mrs. Hudiburgh, was driving her automobile, and had been sent by her on a mission from which he had not returned to the designated base when the collision occurred.

The first two of these, as we have already pointed out, were insufficient to require or to justify submission of the issue to the jury. The third, when considered in the light of the other evidence, adds nothing of probative value.

In the face of his own testimony to the contrary effect, no presumption that Adams was acting within the course and scope of his employment when the collision occurred can be indulged under the theory that a status once shown to exist is presumed to continue. Moore v. Wooten, Tex. Com.App., 280 S.W. 742, 747. Therefore, Adams' assigned mission of carrying the child to school and returning the automobile to the Hudiburgh residence—the only mission even suggested by the evidence as having been assigned him—must be appraised for its own inherent worth in shedding light on the subject; in other words, as a mere circumstance, unaided by any presumption. When so considered, it fails to account for why Adams was on the east side of town, and still traveling east, when the collision occurred; both the Hudiburgh residence and the schoolhouse were on the west side of town and almost on the same street. It also fails to suggest anything that Adams was doing or may have been preparing to do at the time in furtherance of Mrs. Hudiburgh's interests or by way of discharging any duty he himself was employed to perform. He had already discharged his passenger and had in effect passed back by the Hudiburgh residence. In so far, therefore, as lay within its power to shed any light on his further conduct, his assigned mission had terminated. And if we disregard Adams' own explanation of his conduct, we are left with no explanation in the evidence of his presence at the scene of the collision. It is as though we were reduced back to only the two circumstances that Adams was regularly employed by Mrs. Hudiburgh and was driving her automoblie.

In order for an act to have been done in the course and scope of a servant's employment it is necessary that it have been done within the scope of the general authority of the servant, in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. Broaddus v. Long, supra, 135 Tex. 353, 138 S.W.2d 1057; Texas Power & Light Co. v. Denson, Tex. Com.App., 125 Tex. 383, 81 S.W.2d 36, opinion adopted. Proof of such a state of affairs necessarily requires that any suggestion by the evidence that the act was done while the servant was on a purely personal errand of his own be countered and overcome by evidence. See: Houston News Co. v. Shavers, supra, 64 S.W.2d 384. The burden of proof of these matters is on the one seeking to hold the master liable, and in undertaking to discharge it he is in a similar position to that of the plaintiff in Grieger v. Vega, supra, 271 S.W.2d 85, where, on the facts of the particular case, it was held that in order for the plaintiff to prove that an intentional killing was wrongful it was necessary that she prove it was not done in self-defense. The necessary proof can, of course, be made circumstantially, but in order for evidence of this character to be sufficient, facts from which the necessary inference can be reasonably drawn must be proved.

We think the evidence in the case at bar fails to meet the required standard. Driving the automobile was not something falling within the scope of Adams' general authority; he drove it only by special assignment. The errand on which he was sent preceding the collision does not reasonably account for his presence at the scene of the collision, and there is no other fact or combination of facts reflected by the record from which it may be reasonably inferred that he was acting in furtherance of Mrs. Hudiburgh's business and for the accomplishment of the object for which he was employed, rather than on a

purely personal errand of his own, when the collision occurred. Any such inference must of necessity rest altogether on mere speculation and conjecture, and liability cannot be predicated on these. See: Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. It follows that the trial court should have directed a verdict in favor of Mrs. Hudiburgh, or, failing this, should have entered judgment in her favor notwithstanding the verdict. Appellants' points one and two are therefore sustained.

The disposition that has been made of appellants' points one and two renders it unnecessary that we pass upon their third point, which complains of the trial court's charge to the jury regarding what is meant by "an act done in the course of one's employment."

It is likewise unnecessary that we pass upon the matters presented by appellants' fourth and sixth points, for if error was committed in either of the respects asserted by these points it was harmless. The jury's findings in response to special issues other than those about which the complaints in question center—which findings could not reasonably have been affected by the matters complained of in points four and six—are sufficient to support the judgment.

By their fifth point, appellants urge that "the trial court erred in entering judgment for appellee on the verdict for the reason that the finding of the jury that Harvey Adams was traveling at a reasonable speed established the contributory negligence of the appellee as a matter of law." Their theory appears to be that if Adams was traveling at a reasonable rate of speed, despite which the collision occurred, he must have entered the intersection at approximately the same time as the plaintiff did, or else have been in such close proximity to it as to constitute an immediate hazard to plaintiff when the latter entered it, and that since he was to plaintiff's right and was also on a through highway he was entitled to the right-of-way by virtue of either Sec. 71(a) or Sec. 73(a) of Art. 6701d, Vernon's Ann.Civ.St.

The point is overruled. Even disregarding the fact that the jury's failure to find from a preponderance of the evidence that Adams was driving at an excessive rate of speed is not the equivalent of an affirmative finding that he was driving at a reasonable rate of speed, we think appellants' argument is still without merit. The speed at which Adams was driving was only one of the circumstances to be considered in determining which of the drivers was entitled to the right-of-way and whether either of them was, or whether both were, guilty of negligence that proximately caused the collision. Irrespective of his rate of speed, his and plaintiff's rights and duties remained relative. The mere fact that the collision inevitably resulted when both he and the plaintiff continued to pursue the courses of conduct to which they had committed themselves solves nothing; somewhere along the line the one or the other of them, or both, came under the duty of altering his or their course of conduct. The evidence did not conclusively establish that it was the plaintiff who came under this duty.

By their seventh point appellants challenge the sufficiency of the evidence to support the jury's finding that defendant Adams failed to keep a proper lookout. The point is without merit. Despite the fact that his view was unobstructed, Adams, according to his own testimony, failed to observe plaintiff's automobile until it was almost half way across Houston Street and the two automobiles were within a comparatively few feet of each other. This failure, taken in conjunction with the fact that he was approaching the intersection and with his further testimony from which it may be inferred he was not looking to the left of the center line and with plaintiff's testimony to the effect that just before the collision he (Adams) was looking off to his right, is enough to warrant the finding complained of. Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616.

Upon the theory that the plaintiff failed to plead diminished future earn-

ing capacity or loss of future earnings, the appellants, by their eighth point, complain of the instruction by which the trial court authorized the jury to consider these items in assessing plaintiff's damage. The point is overruled. In addition to pleading that as a direct and proximate result of the collision he had been totally incapacitated since the date thereof, and that such "total incapacity will in all probability be permanent," the plaintiff pleaded the following: "That plaintiff is a man, 39 years old, and has a life expectancy of 30 years of usefulness in the future; that prior to this collision and damage in question, plaintiff was a strong ablebodied man, able to work and was actually doing work all times from day to day and was then and there engaged in the work as an operating engineer, and was actually earning $500 per month, and did earn during the year preceding the date of his injury the sum of approximately $4,000, which income would have continued for many years in the future as aforesaid; that he would have continued to earn said income for at least a period of 10 years had he not suffered said injuries, and would have continued to earn a substantial sum for the period of his reasonable life expectancy of 30 years; but that as a direct and proximate result from the negligent acts of the defendants, and each of them, as hereinabove alleged, plaintiff's earnings as above alleged have been wholly lost and a sum of money that would reasonably compensate plaintiff for his said lost earnings amounts to Forty Thousand and No/100 Dollars ($40,000.00), for which sum he maintains this suit." These portions of plaintiff's petition, together with plaintiff's prayer for relief, are deemed sufficient to support the court's charge to the jury.

■ By their ninth point, appellants complain of the trial court's refusal to declare a mistrial because of a side-bar remark made by one of appellee's attorneys in the presence and hearing of the jury during the progress of the trial. The remark was to the effect that the defendant Adams had previously testified two or three different ways. The attorney for appellee had been requested by opposing counsel to agree that the admissibility of an ex parte deposition given by Adams might be passed upon in the absence of the jury before Adams was interrogated under the adverse witness rule. His reply was to the effect that he did not know whether he would offer any part of the deposition in evidence since he didn't know what testimony Adams would give, that Adams had "testified two or three different ways." Not only did the trial court promptly instruct the jury to disregard the remark, but the jury was subsequently placed in position to be its own judge of whether the witness had been inconsistent in his testimony: the portions of his previous testimony given by deposition and at an earlier trial which were deemed by appellee to be at variance with his testimony during the present trial were introduced in evidence for purposes of impeachment. The record as a whole considered, we do not feel that the remark complained of is calculated to have resulted in an improper judgment. The refusal to declare a mistrial was proper in the circumstances.

■ Since Mrs. Hudiburgh's motion for judgment in her favor despite the verdict, as well as her motion for a directed verdict, should have been granted, the judgment of the trial court, in so far as it is against her, is reversed; and since the record gives no cause to suppose that the facts have not been fully developed, judgment is here rendered in her favor. No error appearing in so far as appellant Harvey Adams is concerned, the judgment against him is in all things affirmed.

MURRAY, C. J., and WALKER, J., concur.