Katie RIGSBY et al., Appellants,

v.

Roy M. PITNER, Jr., Appellee.

No. 13260.

Court of Civil Appeals of Texas.

Houston.

March 31, 1960.

Rehearing Denied April 28, 1960.

W. W. Watkins and W. James Kronzer, Houston, and Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellants.

S. G. Kolius and Thomas A. Brown, Jr., Houston, and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was brought by Katie Rigsby and husband, W. H. Rigsby, and Daisy Burks and husband, James A. Burks, against Roy M. Pitner, Jr. and Ernest R. Causey, to recover damages for personal injuries sustained by Mrs. Rigsby and Mrs. Burks in a collision between an automobile operated by Mrs. Burks and a GMC carry-all owned by defendant, Roy M. Pitner, Jr., and at the time driven by his employee, Ernest R. Causey. Prior to the trial, Causey died, and by order of the trial court the cause against Roy M. Pitner, Jr., appellee herein, was severed from the cause of action asserted by the plaintiffs against the said Ernest R. Causey.

The case was tried to a jury which found all issues in favor of the appellants, and awarded the Burkses $2,000 and the Rigsbys $6,500. Appellee filed a motion asking the court to render judgment non obstante veredicto in his favor or, in the alternative, to render judgment in his favor disregarding the answer made by the jury to Special Issue No. 1, asserting that there is no evidence that at the time of the collision Causey was acting within the scope and course of his employment for Pitner. The court sustained such motion and entered judgment that appellants take nothing.

Appellants' only Point complains that the court erred in refusing to enter judgment for them based upon the findings of the jury, and in entering judgment non obstante veredicto for appellee, for the reason there was evidence of probative value in the record to raise and support the findings to all

the special issues and particularly the answer to Special Issue No. 1.

The uncontradicted testimony shows that Pitner was an engineer by profession and had his place of business and office at 611 Calhoun Street in the City of Houston; that Causey was in his employ, having gone to work for him on a permanent basis in April of 1955; that on the morning of April 21, 1955, Causey, McClanahan and Robbins, the latter two being also employees of Pitner, reported to Pitner's office between 7 and 8 a. m. where they were given by Pitner their assignment and instructions for some work to be done in Binglewood, an addition some 11 miles out the Hempstead Highway from the Courthouse in Houston; that Causey was in charge of the party consisting of himself, McClanahan and Robbins and acted as "party chief", and that the carry-all was turned over to him to take the men to Binglewood and bring them back.

We shall first consider the testimony of appellants' witness Robbins, who was the only one who testified as to what the party did and where Causey drove the carry-all after leaving Pitners' office at about 8 a. m. Robbins testified that they left in Pitner's GMC carry-all with Causey driving. They went to Binglewood where they measured some houses and the distances from houses to lot lines, and entered notations and dimensions in a field book which Causey had with him so that the plans could be drawn on a plat when they got back to the office; that they finished up what they had to do out there at 1 o'clock, in the afternoon; that they knocked off because they had finished what they had to do; that their pay started when they left Pitner's office and terminated when they left the field job, and that they turned in four hours for the day and were paid for four hours' work.

He also testified that after they finished up that job they went to a little cafe out on the Hempstead Highway, where they stayed two hours and had three or four beers; that while there they decided to go to Haney's house [Haney was a former employee of Pitner]; that they went from said cafe to an icehouse or lounge on North Main Street about a block north of Boundary Street which, as he remembered, was the second place they went to drink beer; they got there by leaving the Hempstead Highway at Eleventh Street and going east on said street and then on Pecore to North Main, the trip taking about 30 minutes; that they stayed at the second place half an hour, drinking beer; that they then went to Haney's house on Quitman and a beer joint on Quitman Street at Elysian; that Robbins and McClanahan went into the beer joint or icehouse and Causey went across the street where he stayed an hour and then joined the others at the beer joint where they stayed another half hour or hour, drinking more beer; that they were in such third beer joint from about 4 p. m. until about 6:30 p. m.; when they decided to return to Pitner's office; that they went on Elysian Street to Lorraine, jogged a block over to Hardy, made a jog to McKee and turned south; that he, Robbins, was looking around talking and did not see the accident; and that he spent that night and the next day and night in jail, charged with being drunk.

The evidence shows that the collision occurred on McKee Street about one block south of Buffalo Bayou and that Causey was convicted of driving while intoxicated and fined $75 and confined in jail for three days.

Pitner testified that he gave Causey instructions to come right back to the office when the job was done and to put the carry-all across the street where his garage was located; that he pointed out on the map the location of the work they were to do, and that he instructed them either to come home or call him when they finished staking off the lots; that he did not give them instructions to perform any services other than staking off the lots; and that when Causey called about 12 or 1 o'clock, he told him to come on back and bring the truck [carry-all] directly to the office.

This was testimony of an interested party, but it is substantially corroborated by Robbins who testified when asked if it was Pitner's instructions that they were to go straight to the job and come straight back, that, he, Pitner, told Causey that, and also that he [Robbins] knew that the standing instructions to those in the truck were that they were to come right back from that job. Robbins further testified that when the accident occurred they were some two miles farther east than Pitner's office, to which they were supposed to return.

It seems clear that the evidence hereinabove set out, standing alone, shows that there was a complete departure by Causey from the course of his employment. Appellants rely, however, in addition to a presumption which will be hereinafter discussed, upon the following testimony of Robbins which they say constitutes some evidence that Causey was acting within the course of his employment:

"Q. Let me ask you this, Mr. Robbins. Do you know whether or not a field book was missing? A. Yes, Haney had the field book at his house. It was in his truck.

"Q. Had you seen that field book in Haney's truck before and did you know that it was in Haney's truck? A. Yes.

\* \* \* \* \* \*

"Q. When you left Haney's house, did you take the field book that had been at Haney's house? A. Yes, sir.

"Q. Was it a field book of Mr. Pitner's? A. Right.

"Q. Was it a field book that pertained to work of Mr. Pitner? A. It did.

"Q. It was a field book that was going to be used the following day in connection with work for Mr. Pitner? A. Yes, sir.

"Q. Mr. Haney previously worked for Mr. Pitner? A. Yes, sir.

"Q. And had Haney's truck been used in connection with the work done for Mr. Pitner? A. It had."

As we construe this testimony, Robbins, in answering the questions propounded, was stating what he, Robbins, did and not what Causey did. True, Robbins later testified that when they got to the third beer joint on Quitman Street, he went inside and drank a beer and Causey went across the street where he stayed about an hour and then came over to the beer joint and drank another one or two beers. It is not shown where Causey went when he crossed the street, nor what his purpose was in going there. The inference is that it was to see Haney.

■ The trial court was of the opinion that there was no evidence to sustain the affirmative answer to Special Issue No. 1, that Causey was acting within the scope and course of his employment for appellee at the time of the collision, and accordingly entered judgment as hereinabove stated. In order to sustain a judgment non obstante veredicto, it must be determined that there is no evidence of probative force upon which the jury could have made the findings relied upon. Lynch v. Ricketts, Tex.Civ.App., 306 S.W.2d 410, reformed and affirmed Tex., 314 S.W.2d 273. "We may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings and we must disregard all evidence which would lead to a contrary result." Biggers v. Continental Bus System, 1957, 157 Tex. 351, 298 S.W. 2d 79, 303 S.W.2d 359, 363.

■ In considering the testimony of Robbins upon which appellants must rely, it is at once observed that there is no evidence that Causey or Robbins was authorized or instructed to pick up any field book. Both Pitner's testimony and Robbins' testimony show just the contrary. There is no evidence that Causey, much less Robbins, had any general authority to pick up such field book or that the act done grew out of an authority which Pitner had con-

ferred upon either of them. Causey was not a general superintendent—only a party chief of the party on the job that morning. When Robbins or Causey took the field book of Pitner's on leaving Haney's house, it was not an authorized but a voluntary act on his part in no way related or incidental to the work which they had been assigned to do and had finished at Binglewood. They had completed their job for the day and their assignment at Binglewood, and had left there with instructions to return directly to the office. There is no evidence as to where or in what way the field book was to be used the next day or that it was necessary to use it in any work that Pitner may have contemplated, or, indeed, that he contemplated sending Causey on any work the next day. There is no evidence that any such field book was ever delivered to Pitner or his office, or that it was found in the carry-all after the collision. There is no evidence that Haney had worked for Pitner subsequent to February 16, 1955, more than two months prior to the collision, and no evidence as to how long a time the field book had been in Haney's truck. Robbins testified he had never worked with Haney. The undisputed evidence shows that it was customary to transcribe notes and measurements from field books to plats or maps within 24 hours. The party under Causey, according to Robbins, had taken a field book with them to their work that morning. Such field book had in it some blank pages. No reason is assigned for the need of any other field book. The evidence also shows that Haney had not worked in the same section in Binglewood that Causey's party worked in on the day of the accident.

Appellant refers to the testimony of Pitner to the effect that Haney called Pitner after the collision and stated, "They came to see me." Nowhere is it stated, however, that they went to Haney's to get a field book. If they had done merely that, it would not have taken the time consumed. Moreover, the undisputed testimony showed

Haney and Causey were friends, which fact could account for the visit.

The testimony of Robbins indicates that Haney lived on Quitman Street, presumably across the street from the third beer joint, and, according to the map of Houston, Defendant's Exhibit No. 1, about three miles northeast of Pitner's office at 611 Calhoun. Binglewood is northwest of Houston and in an entirely different direction from Pitner's office than the second and third beer joints.

Robbins testified it took them about 45 minutes to drive from Pitner's office to Binglewood in the direct route they took. Instead of returning by such route, they drove off the Hempstead Highway and east on Eleventh Street and, after visiting the second and third beer joints, finally ended up in the collision at about 6:30 p. m. approximately two miles northeast of Pitner's office, where they should have arrived at approximately 1:45 p. m. If the party had been able to drive the carry-all back to Pitner's office after the collision, they would have approached the office from a direction just opposite to the direct route leading to Binglewood.

Since we are here considering whether there is any evidence sustaining the jury's finding that Causey was acting within the course and scope of his employment, we think it unnecessary to set out the testimony of appellee which, in the absence of some corroborative evidence, the jury were at liberty to disbelieve and disregard in whole or in part. Hudiburgh v. Palvic, Tex.Civ.App., 274 S.W.2d 94, ref., n. r. e. Suffice it to say that he testified in part to the effect that Causey had no authority to use the carry-all for his personal business or pleasure; that appellee had no knowledge that Causey drank; that appellee had no missing field book; that Haney did not have one of his field books at that time; that no field book was brought back to him; that in his work, data in field books was usually transcribed on maps or plats with-

in 24 hours and the field books were then placed on a shelf in the office; that he had not lost a field book since 1949 or 1950 and then in a place remote from Binglewood; that he had not needed the alleged field book in conducting his business; and that Causey worked and was paid on an hourly basis.

■ Our courts have held that the proof offered must amount to more than a mere scintilla of evidence and do more than raise a mere suspicion in order to be relied upon as having probative force. Although there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the fact sought to be established, such testimony, in legal contemplation, falls short of being any evidence. Rounsaville v. Bullard, 1955, 154 Tex. 260, 276 S.W.2d 791; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063; Austin v. Neiman, Tex.Com.App., 14 S.W.2d 794.

In this case the undisputed evidence shows a clear departure by Causey from the course and scope of his employment. His work for the day, except for returning the truck and tools to appellee's place of business, had been completed. In violation of undisputed instructions, he had not returned to Pitner's place of business, but had detoured several miles from the return course, and had engaged in the personal business of drinking beer. The testimony is not clear whether Causey or Robbins picked up a field book at Haney's. The testimony is uncontradicted that they were not authorized to do anything except return directly to Pitner's office. There is no evidence that the party went to Haney's house to pick up a field book. The evidence is clear that after the field book was picked up, Causey returned to the beer joint and resumed or continued drinking beer for at least half an hour or an hour, thus again departing from the course of his employment if it can be said that in picking up the field book the party had returned thereto.

While Robbins' testimony relative to the unauthorized and voluntary act of picking up a field book, which he said was to be used the next day in Pitner's business, may constitute slight testimony that Causey was acting within the course of his employment at the time of the collision, its probative force, under the facts and circumstances of this case, is so weak that it merely gives rise to surmise or suspicion, falling short of being any evidence. Rounsaville v. Bullard, supra.

Appellants strenuously contend that proof, that the carry-all belonged to Pitner and that Causey was in his employment, creates a presumption that Causey was acting within the scope and course of his employment at the time of the collision, thereby placing on appellee the burden of proving that Causey was using the truck for his own purposes or outside the scope of his employment. Appellants cite for this proposition Broaddus v. Long, 1940, 135 Tex. 353, 138 S.W.2d 1057. In that case plaintiffs' evidence was such as to give rise to a presumption that the employee was acting within the scope of his employment and to establish a prima facie case. The rebutting evidence of the defendant was adduced from witnesses whom the jury were not bound to believe. The court held that the evidence of plaintiff would support the jury finding.

■ We think that proof of ownership of the carry-all and Causey's employment created a presumption that Causey was acting within the course of his employment. The presumption was not a conclusive one but a rebuttable presumption. It placed upon appellee the burden of going forward with evidence. In the absence of any proof rebutting such presumption, appellants could prevail. Appellants, themselves, rebutted the presumption by their witness, Robbins, whose testimony destroyed the initial presumption and established as a matter of law that Causey was not acting within the course of his employment at the time of the collision and that after departure from the course of his employment he never re-entered the same. Causey, after departing from his course, as afore-

said, never returned reasonably near the route from Binglewood to Pitner's office. The departure in this case was so extensive that it was not foreseeable. The collision did not occur within a zone of risk within which Causey might be expected to deviate.

 It is our view that the burden of proof was always upon appellants to prove their cause of action, including their allegation that Causey was acting within the course of his employment. Prima facie proof may be satisfied by the presumption aforesaid and support a jury finding, if not refuted by clear, positive and undisputed evidence. As stated by Judge Alexander in Houston News Co. v. Shavers, Tex.Civ. App.1933, 64 S.W.2d 384, 386, writ ref.:

"When, however, he [the defendant] discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce other evidence or his cause fails."

In Empire Gas & Fuel Co. v. Muegge, 1940, 135 Tex. 520, 143 S.W.2d 763, 767, decided the same year as the Broaddus case, supra, the Commission of Appeals, in an opinion by Judge Smedley, stated:

"The presumption is a true presumption, which has been defined as 'a rule of law laid down by the courts which attaches to facts certain procedural consequences'. McCormick & Ray's Texas Law of Evidence, Sec. 32, p. 48. It places on the party against whom it operates the burden of producing evidence. It is not evidence and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict. McCormick & Ray's Texas Law of Evidence, pp. 51, 58, Sections 34, 37; 20 Amer.Jur. pp. 170, 171, Sec. 166."

To like effect see Lumbermen's Lloyds v. Jones, 1954, 153 Tex. 379, 268 S.W.2d, 909, in which the Supreme Court quoted at length from the opinion of Judge Alexander in Houston News Co. v. Shavers, supra. See also Hudiburgh v. Palvic, supra.

The case of Standard Coffee Co., Inc. v. Trippet, 5 Cir., 1939, 108 F.2d 161, relied on by appellants, is distinguishable. It merely holds that the rebutting testimony in that case was not so clear and positive as to warrant as a matter of law, the overturning of the presumption arising from ownership and operation of the automobile.

We are in accord with the proposition that if the act complained of is done within the general authority of the servant in the furtherance of the master's business and for the accomplishment of the object for which the servant is employed, the master may be liable even though the actual act may be contrary to expressed orders. Texas Power & Light Co. v. Denson, 1935, 125 Tex. 383, 81 S.W.2d 36, and authorities cited. See also Industrial Fabricating Co. v. Christopher, Tex.Civ.App., 220 S.W.2d 281, ref., n. r. e. In the present case Causey had been sent out on a special assignment which had been accomplished. He had no general authority to drive in the part of Houston where his detour took him or to pick up a missing field book without request or authorization, long after his work for the day had been completed.

 As stated in Restatement of the Law, Sec. 233, Agency 2d, "Conduct of a servant is within the scope of employment only during a period which has a reasonable connection with the authorized period." In this case the incidental picking up of a field book and the attempt later to return to Pitner's office occurred hours after the authorized period of employment for the day had terminated.

Sec. 234 of Agency 2d, Restatement of the Law, provides: "Conduct is within the scope of employment only in the authorized area or in a locality not unreasonably distant from it." The acts of Causey and

Robbins occurred in an area unreasonably remote from the route from Binglewood to Pitner's office. The detour was an extensive one. There is no evidence that it was made for Pitner's purposes or in furtherance of his business.

If we accept Robbins' statement that the field book he or Causey picked up was to be used the next day, there is, as above stated, nothing to show any necessity for using it or that its use would in any way benefit Pitner, or that Causey or Robbins was under any duty to pick it up, or was requested to do so. We think the testimony of Robbins shows that the party would have made the detour without regard to any field book, and that picking it up was merely an incidental occurrence. Causey's work did not create the necessity for travel to Haney's. Since such journey would have gone forward independently of any lost field book and although the alleged business errand was undone, the departure was personal and not in the course of employment. See opinion of Chief Justice Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181.

We agree with appellants that drinking, in itself alone, does not necessarily take an employee out of the course and scope of his employment. In this case, however, the intoxication of both Robbins and Causey is coupled with an extensive deviation or departure in both territory and time from the course and scope of their employment, made not in furtherance of Pitner's business or for his benefit, but for the employees' own purposes.

We think the case of Southwest Dairy Products Co. v. De Frates, Tex.Com.App. 1939, 132 Tex. 556, 125 S.W.2d 282, 284 122 A.L.R. 854, is very much in point. As stated by Judge Hickman who wrote the opinion in that case, the cases involving facts more or less like the facts of that case are legion. While the rules of law may be more or less well established, the difficulty lies in the application of such rules.

In the De Frates case an employee, Henderson, instead of going directly from the defendant's plant to the wash rack some seven blocks away, where he was supposed to go, drove the truck approximately four times that distance to his home to get supper. After finishing his supper, he started to the wash rack. The collision occurred about six blocks distant from the defendant's wash rack and not on the route between the defendant's plant and the wash rack. The court held that under the established rule, had the accident occurred while Henderson was on his way home to get his supper, the employer would not have been liable. The court then held that although the purpose in the mind of Henderson while on the return trip was to take up the duties of his employment, his master's liability did not rest alone upon the purpose in mind. The test of liability was whether he was engaged in his master's business and not whether he purposed to resume it. Although Henderson owed the duty to his master of returning the truck to the zone of his employment, such fact did not fix the master's liability. The court stated:

"It was Henderson's own wrong in driving away that created the duty to return, and in returning he was but undoing that wrong. The return was referable to, and an incident of the departure. He was no more engaged in his master's business while returning to, than while departing from his path of duty. [Citing authorities.]"

It is true that in the De Frates case Henderson was engaged in a purely personal matter when he went to his home for supper. In the instant case, since it is nowhere shown that Causey and his party went to Haney's home other than to visit Haney, we think this case falls within the holding in the De Frates case. We do not think that the incidental picking up of a missing field book, followed by the drinking of beer for another hour, can be said to constitute a resumption by Causey of service within the course and scope of his employment. Our holding herein is sup-

ported by the reasoning in Barton v. J. M. Radford Grocery Co., Tex.Civ.App., 85 S.W.2d 801, writ dism., and Southern Casualty Co. v. Ehlers, Tex.Civ.App., 14 S.W.2d 111.

We have concluded that the evidence that Causey was acting within the course and scope of his employment at the time of the collision does not rise above the level of suspicion or surmise and is at most no more than a mere scintilla.

The judgment of the trial court is affirmed.